[No. A037060. First Dist., Div. One. Dec. 21, 1988.]

MARY MALONEY et al., Plaintiffs and Appellants, v. AMERICAN PHARMACEUTICAL COMPANY, Defendant and Respondent.

[Opinion certified for partial publication.*]

*Pursuant to California Rules of Court, rule 976(b), this opinion is certified for partial publication. Portions deleted are noted by the insertion of the following symbol at the points of omission: [[ ]].

**COUNSEL**

LeRoy Hersh, Dan Bolton and Hersh & Hersh for Plaintiffs and Appellants.

Michael A. Farbstein for Defendant and Respondent.

OPINION

**HOLMDAHL, J.**—This case presents a question of successor liability of a corporation for injuries allegedly caused by a prescription drug manufactured by a predecessor corporation, now defunct. We conclude that successor liability does not attach, and we affirm a summary judgment entered in favor of the defendant corporation.

### Statement of Facts

Declarations and deposition transcripts filed in the case at bar reveal the following uncontroverted facts. In 1950, while Mary Maloney was a fetus developing in Grace Beckley's womb, Grace Beckley took a prescription drug, stilbestrol, also known as diethylstilbestrol (DES). The manufacturer of that drug was American Pharmaceutical Company, a Delaware corporation (APC I).

APC I went through a period of financial difficulty. In 1972, all of the then officers of APC I were fired and William Widerkehr was installed as APC I's new president, at the behest of the principal stockholders and with the approval of the First Pennsylvania Banking and Trust Company (the bank), APC I's sole secured creditor, to which APC I owed over $1 million. Widerkehr's efforts failed to save APC I. The bank called its notes, APC I ceased doing business, and Widerkehr worked for the bank during the early part of 1973 liquidating the assets of APC I. The bank took over APC I's accounts receivable. Except as noted below, the bank sold APC I's machinery and equipment and other assets to Keith Machinery Company and to various other persons.

In August 1973, Widerkehr and two other men (who had not been associated with APC I) formed a new corporation called American Pharmaceutical Company (APC II), with Widerkehr as president. APC II was, and is, a New Jersey corporation. In September, 1973, the bank sold the leftover bottles, labels, packaging materials and finished goods which bore APC I's logo, and were therefore of no use to other companies, to APC II. APC II paid the bank $32,500 for these items and paid $500 for the right to use APC I's name, APC I's goodwill, and APC I's patents and trademarks (limited to nonprescription drugs). The assets of APC I which APC II acquired constituted about 10 percent of the total liquidated assets of APC I.

APC II acquired none of APC I's machinery, equipment, buildings, inventory, stock, or accounts receivable. APC II never used any of the premises formerly occupied by APC I. APC II did not and does not make

or sell prescription drugs, and has never made, sold, or owned any DES. APC II did not agree to assume any of the liabilities of APC I.

### Procedural History

On January 12, 1982, Mary Maloney filed a complaint in Contra Costa County Superior Court in which she claimed that the DES which her mother had taken had caused Mary Maloney to suffer menstrual irregularities, cysts, ovarian and fallopian tube irregularities, and precancerous vaginal and cervical growths. The complaint further alleged that T. J. Maloney, Mary Maloney's son, suffers from cerebral palsy as a result of Mary Maloney's exposure to DES as a fetus. Mary Maloney sued in her own behalf and as guardian ad litem for her minor son. The defendants in this first complaint were four pharmaceutical companies and one hundred does. The defendants in a third amended complaint, filed December 8, 1982, were 171 companies and 250 does. The third amended complaint asserts the following theories of recovery: strict liability for a defective product, negligent manufacture, breach of implied warranty, breach of express warranty, and fraud.

[[ ]] . . . . . . . . . . . . . . . . . . . . . .*

On September 9, 1983, (defendant) APC II filed a motion for summary judgment, on the ground that APC II did not market or manufacture the DES which had allegedly caused plaintiffs' injuries. (Indeed, as noted above, APC II never marketed or manufactured any DES at all.) Plaintiffs opposed the motion, on the ground that a triable issue of fact existed as to APC II's successorship status. The trial court denied the motion on November 28, 1983. On February 18, 1986, APC II again moved for summary judgment, on the same ground as that asserted in its first summary judgment motion. The trial court decided to hear the motion anew, and granted APC II's motion for summary judgment on April 17, 1986. A judgment of dismissal as to APC II was entered June 24, 1986. Plaintiffs appeal that judgment. (No. A037060.)

[[ ]] . . . . . . . . . . . . . . . . . . . . . .*

*APC II Liability for Injuries Caused by Drug Manufactured by APC I*

■■■■■ *Brown v. Superior Court* (1988) 44 Cal.3d 1049, 1066, 1072 [245 Cal.Rptr. 412, 751 P.2d 470] authoritatively establishes "that a manufacturer of prescription drugs is not strictly liable for injuries caused by . . . a [design] defect that is neither known nor knowable at the time the

---

*See footnote, *ante,* page 282.

drug is distributed," and that such a manufacturer cannot be liable for failure to warn of such a defect.[1] ■ *Brown* further establishes that "a cause of action for breach of warranty does not lie against a prescription drug manufacturer." (*Brown* v. *Superior Court, supra,* 44 Cal.3d at p. 1072, fn. 14.) ■ ■ ■ ■ Plaintiffs make no contention that *Brown* does not apply to negate their strict liability and breach of warranty theories of recovery.[2] ■ Instead, plaintiffs contend that APC II is liable as a successor to APC I for negligent manufacture of DES.

■ The usual rule of successor liability, as stated in *Ray* v. *Alad Corp.* (1977) 19 Cal.3d 22, 28 [136 Cal.Rptr. 574, 560 P.2d 3], is that "a corporation purchasing the principal assets of another corporation assumes the other's liabilities" only if "(1) there is an express or implied agreement of assumption, (2) the transaction amounts to a consolidation or merger of the two corporations, (3) the purchasing corporation is a mere continuation of the seller, or (4) the transfer of assets to the purchaser is for the fraudulent purpose of escaping liability for the seller's debts." (Citing *Ortiz* v. *South Bend Lathe* (1975) 46 Cal.App.3d 842, 846 [120 Cal.Rptr. 556] and other cases.) Plaintiffs contend that APC II is liable for APC I's negligent acts because APC II is a mere continuation of APC I (circumstance (3) from the above quote).

■ *Ortiz* v. *South Bend Lathe, supra,* 46 Cal.App.3d at page 847 holds, as a matter of law, "Before one corporation can be said to be a mere continuation or reincarnation of another it is required that there be insufficient consideration running from the new company to the old." (Citing *Enos* v. *Picacho Gold Min. Co.* (1943) 56 Cal.App.2d 765, 779 [133 P.2d

---

[1] A design defect is one of three kinds of defect which can make a product dangerous. The other two are (1) "a flaw in the manufacturing process, resulting in a product that differs from the manufacturer's intended result" and (2) an "absence of a warning that [is] necessary to allow [the product's] safe use." (*Brown* v. *Superior Court, supra,* 44 Cal.3d at pp. 1057, 1065.)

[2] The parties to APC II's appeal both assume that *Brown* is retroactive enough to apply to the present case. This assumption is in accord with the California "rule of practice that decisions of . . . appellate courts, particularly those of the Supreme Court, are ordinarily retrospective in operation." (*Kreisher* v. *Mobil Oil Corporation* (1988) 198 Cal.App.3d 389, 398 [243 Cal.Rptr. 662].) *Brown* cannot accurately be characterized as a change in the law. *Brown* upheld the San Francisco Superior Court's determination "that defendants could not be held strictly liable for the alleged defect in DES . . . ." (*Brown* v. *Superior Court, supra,* 44 Cal.3d at p. 1055.) The Court of Appeal which had originally reviewed the Superior Court's determination had "approve[d] the trial court's decision," noting that it was in accord with several other Court of Appeal decisions. (*Brown* v. *Superior Court* (1986) 192 Cal.App.3d 150, 158, 162 [227 Cal.Rptr. 768], citing *McCreery* v. *Eli Lilly & Co.* (1978) 87 Cal.App.3d 77, 86-87 [150 Cal.Rptr. 730], disapproved on another point in *Sindell* v. *Abbott Laboratories* (1980) 26 Cal.3d 588 [163 Cal.Rptr. 132, 607 P.2d 924, 2 A.L.R.4th 1061], *Carmichael* v. *Reitz* (1971) 17 Cal.App.3d 958, 987-989 [95 Cal.Rptr. 381], and *Toole* v. *Richardson-Merrell, Inc.* (1967) 251 Cal.App.2d 689, 708-711 [60 Cal.Rptr. 398, 29 A.L.R.3d 988].)

663] which characterizes lack of consideration as an "essential foundation" of the mere continuation theory.) Although *Ray* disapproves *Ortiz,* to the extent *Ortiz* applies the usual rule of successor liability to a situation in which strict tort liability for defective products is an available theory of recovery, nothing in *Ray* indicates that the holding of *Ortiz* does not apply in cases like the present one, where strict tort liability for defective products is not available. (See *Ray* v. *Alad Corp., supra,* 19 Cal.3d at p. 34.) In its respondent's brief, APC II invites our attention to the fact that *Ortiz* holds that inadequate consideration is an essential ingredient of mere continuation. Plaintiffs' reply brief ignores *Ortiz.*

APC II's purchase of certain assets of APC I was pursuant to a written agreement entitled "JOINT BILL OF SALE. " Plaintiffs did not suggest in the trial court, nor do plaintiffs suggest on appeal, that the money which APC II paid for the assets of APC I which it acquired was not an adequate and valid consideration for those assets. Nor has our independent review of the record revealed any evidence of insufficient consideration. In the absence of such evidence, the consideration recited in the bill of sale was presumptively sufficient. (Civ. Code, § 1615.[3])

We additionally note that several other characteristics of a mere continuation to which *Ray* alludes are missing in the present case. First, one can not reasonably characterize 10 percent of APC I's total assets as its "principal assets." (Cf. *Ray* v. *Alad Corp., supra,* 19 Cal.3d at p. 28; *Kaminski* v. *Western MacArthur Co.* (1985) 175 Cal.App.3d 445, 457 [220 Cal.Rptr. 895].) Second, a mere continuation contemplates a direct sale of assets from the predecessor corporation to the successor corporation, not a sale from a creditor of the predecessor corporation which has taken over its assets.[4] (*Ray, supra,* at p. 28.) Third, a mere continuation typically involves continuity of employees beyond the single officer which APC I and APC II shared in the present case. (See *id.* at p. 29; cf. *Kaminski* v. *Western MacArthur Co., supra,* 175 Cal.App.3d at p. 453 [45 out of 50 employees].)

Plaintiffs correctly point out that the relationship between APC I and APC II involved two characteristics which can contribute to a finding that one corporation is a mere continuation of the other. First, APC II did "[hold] itself out to customers and the public as a continuation of" the

---

[3] Civil Code section 1615 provides, "The burden of showing a want of consideration sufficient to support an instrument lies with the party seeking to invalidate or avoid it."

[4] The parties dispute whether APC I was a party to the transaction in which APC II paid $500 for the use of APC I's name, goodwill, and patents and trademarks (limited to nonprescription drugs). The parties also dispute whether that transaction included the right to use APC I's customer lists. Neither of these disputes creates a triable issue of fact which has any bearing on the disposition of the case.

enterprise conducted by APC I. (Cf. *Ray* v. *Alad Corp., supra,* 19 Cal.3d at p. 29.) Widerkehr sent a letter to prospective customers in which he represented that APC II was a reorganization of APC I under new ownership and a continuation of APC I's business under new management. The letter indicated that the business had moved to New Jersey and asked recipients to note "our new mailing address and telephone number . . . ." Second, "one or more persons were officers, directors, or stockholders of both corporations." (Cf. *Ray* v. *Alad Corp., supra,* 19 Cal.3d at p. 29.)

Plaintiffs, however, present no argument as to how the presence of these two characteristics can make up for the absence of the essential ingredient of inadequate consideration. In the absence of that ingredient, APC II is not a mere continuation of APC I, such that liability for APC I's alleged negligent manufacture of DES might attach to APC II. (*Ortiz* v. *South Bend Lathe, supra,* 46 Cal.App.3d at p. 847.)

*Ray* not only states the usual rule of successor liability. *Ray* creates and applies an exception to that general rule, applicable in cases where strict tort liability for defective products is an available theory of recovery. The exception is as follows. ■ "[A] party which acquires a manufacturing business and continues the output of its line of products . . . assumes strict tort liability for defects in units of the same product line previously manufactured and distributed by the entity from which the business was acquired." (*Ray* v. *Alad Corp., supra,* 19 Cal.3d at p. 34.)

Plaintiffs contend, "The [*Ray*] Court did not intend that the 'product line' rule apply only to strict liability but to all forms of tort liability, including negligence." Plaintiffs make this contention in spite of the fact that the *Ray* court declares that the exception to the general rule which it announces applies only "under the narrow circumstances [t]here presented" (*id.* at p. 25), and indicates that those narrow circumstances include the availability of a strict tort liability theory of recovery (*id.* at pp. 30, 34). (See the discussion of *Ray* in 6 Witkin, Summary of Cal. Law (9th ed. 1988) Torts, § 1273, subd. (a)(2), p. 718, entitled *Special exception for strict products liability.*) Likewise, cases on which plaintiffs rely which interpret *Ray* indicate that the *Ray* exception applies in product liability cases in which strict tort liability is available as a theory of recovery, and make no effort to extend its applicability beyond the arena of strict liability. (*Kaminski* v. *Western MacArthur Co., supra,* 175 Cal.App.3d at pp. 454, 456 [strict tort liability for injury caused by asbestos exposure]; *Rawlings* v. *D. M. Oliver, Inc.* (1979) 97 Cal.App.3d 890, 894, 898-901 [159 Cal.Rptr. 119] [strict tort liability for injury caused by allegedly defective kelp dryer].)

Plaintiffs contend that policy considerations should impel this court to expand the scope of the *Ray* exception beyond the strict liability arena. In

light of the *Ray* court's language limiting the scope of its exception, this court is not in a position to effect the expansion which plaintiffs urge, no matter what the court may think of plaintiffs' policy arguments. (*Auto Equity Sales, Inc.* v. *Superior Court* (1962) 57 Cal.2d 450, 455 [20 Cal.Rptr. 321, 369 P.2d 937].) In light of the uncontroverted facts and the applicable law, APC II cannot be held liable for injuries caused by DES manufactured by APC I, under either of the theories of successor liability asserted by plaintiffs, and the trial court did not err in its grant of summary judgment to APC II.

*Ray* v. *Alad Corp., supra,* 19 Cal.3d at page 31 states, "Justification for imposing strict liability upon a successor to a manufacturer under the circumstances here presented rests upon (1) the virtual destruction of the plaintiff's remedies against the original manufacturer caused by the successor's acquisition of the business, (2) the successor's ability to assume the original manufacturer's risk-spreading role, and (3) the fairness of requiring the successor to assume a responsibility for defective products that was a burden necessarily attached to the original manufacturer's good will being enjoyed by the successor in the continued operation of the business."[5] (Italics omitted.) In view of the conclusion reached above, that the *Ray* exception is limited to cases in which strict tort liability is available as a theory of recovery, we need not deal with the parties' contentions as to whether the three aspects of *Ray* quoted above are or are not present in the case at bar.

[[ ]] . . . . . . . . . . . . . . . . . . . . . .*

The judgment of the trial court is affirmed.

Racanelli, P. J., and Newsom, J., concurred.

Appellants' petition for review by the Supreme Court was denied March 16, 1989. Mosk, J., was of the opinion that the petition should be granted.

---

[5] The trial court focussed on the first of these three aspects of *Ray* in granting APC II's motion for summary judgment, declaring, "[T]here is no causal relationship between APC [II's] purchase of assets and the d[e]struction of Plaintiff[s'] remedies against APC [I]." *Lundell* v. *Sidney Machine Tool Co.* (1987) 190 Cal.App.3d 1546, 1556 [236 Cal.Rptr. 70] characterizes the three aspects as "prongs" and declares that "all three [prongs] must be satisfied before imposing products liability on a successor."

* See footnote, *ante,* page 282.