[No. B109606. Second Dist., Div. Six. Oct. 13, 1998.]

JUANITA ROSALES, Plaintiff and Respondent, v.
THERMEX-THERMATRON, INC., Defendant and Appellant.

COUNSEL

Horvitz & Levy, David M. Axelrad, Daniel J. Gonzalez, Seifert, Henderson & Farricker and Steven L. Anderson for Defendant and Appellant.

Ball & Yorke, Brian Yorke and Esther R. Sorkin for Plaintiff and Respondent.

## OPINION

**GILBERT, J.**—In this product liability case, judgment was awarded to plaintiff for injuries she suffered from a product manufactured by defendant's corporate predecessor 24 years earlier. Defendant had continued to distribute the same products of the corporation it had acquired. Its acquisition of the predecessor corporation had destroyed plaintiff's remedy against that corporation.

Liability was based on *Ray* v. *Alad Corp.* (1977) 19 Cal.3d 22 [136 Cal.Rptr. 574, 560 P.2d 3] in which our Supreme Court held that under these, and other circumstances, the acquiring company is strictly liable for defects in the products manufactured by the predecessor company. The circumstances of *Ray* are applicable here.

Defendant argues that the *Ray* doctrine of "product line liability" should be overruled. It points out that only one published decision affirmed a judgment based on *Ray*'s theory of successor liability.

This is the second case.

On appeal the defendant also contends the trial court erred in instructing the jury about the elements of the *Ray* doctrine; plaintiff failed to prove the machine was in the same condition as it was when it left the manufacturer; the defendant is entitled to an offset for the full amount of workers' compensation benefits; and the trial court's award of sanctions was an abuse of discretion. We affirm[1].

## Facts

Juanita Rosales was working at Perfect Plastics Products in October of 1993. She was using a Sealomatic heat sealing machine when the machine's thermal plate collapsed on her hand. She was seriously injured. She sued, among others, Thermex-Thermatron, Inc., as the successor to the company that manufactured the Sealomatic machine.

The jury found for plaintiff. They found plaintiff not to have been at fault, plaintiff's employer to have been 40 percent at fault and defendant to have been 60 percent at fault. The trial court entered judgment in her favor for $544,875.37 after deducting a portion of the workers' compensation benefits plaintiff received from her employer. The trial court also awarded plaintiff $123,002.85 in fees and costs for having to prove matters that should have been admitted in defendant's responses to plaintiff's requests for admissions.

### Liability of Successor Corporation

Ernie Gross and his brother started Sealomatic Electronics Corporation over 40 years ago. In 1968 Gross changed its name to Solidyne Corporation.

---

[1]After we published an opinion and granted a rehearing in this matter, the parties filed with the court a joint motion and stipulation for dismissal of appeal. Because this action involves issues of continuing public interest which are likely to recur, we exercise our inherent discretion to resolve those issues although the parties' stipulation would normally render this action moot. (*Liberty Mut. Ins. Co.* v. *Fales* (1973) 8 Cal.3d 712, 715-716 [106 Cal.Rptr. 21, 505 P.2d 213]; *Beilenson* v. *Superior Court* (1996) 44 Cal.App.4th 944, 948-949 [52 Cal.Rptr.2d 357].)

Sealomatic became a division of Solidyne. Solidyne continued to manufacture machines under the name Sealomatic. The machine that injured Rosales was manufactured by Solidyne in 1969.

In the 1970's Gross purchased other heat sealing equipment from manufacturers including Thermatron and Faratron. Like Sealomatic, Thermatron and Faratron operated as divisions of Solidyne. In 1980 Gross purchased Thermex, which became another division of Solidyne.

The Gross brothers died around 1981 and their shares in Solidyne were sold to a Bermuda corporation. The corporation shut down the Sealomatic and Faratron divisions of Solidyne. Some of the equipment and other materials used to manufacture Sealomatic and Faratron machines were transferred to the Thermatron division. Some Sealomatic components may have been used to manufacture new Thermatron machines. The Bermuda corporation consolidated Solidyne's remaining heat sealing machine divisions into a new corporation, Thermex-Thermatron, in 1985. This corporation was Solidyne's wholly owned subsidiary.

Solidyne's shares were transferred to Pavion International. Pavion went into receivership and Solidyne's Thermex-Thermatron subsidiary was sold to TTI Acquisitions, a corporation owned by two officers and an employee of the Thermex-Thermatron subsidiary. TTI Acquisitions merged with Thermex-Thermatron to become Thermex-Thermatron, Inc., (hereafter Thermex-Thermatron) the defendant in this action.

The purchase transferred to TTI all assets and liabilities of the Thermex-Thermatron subsidiary including its manufacturing plant and manufacturing machinery. At the time of the sale, the purchasers were aware that the Thermex-Thermatron subsidiary had responded to a lawsuit alleging damages caused by a Faratron machine; that is, a machine made by a former division of Solidyne.

The sale price TTI paid for the Thermex-Thermatron subsidiary was $2.4 million. The money was paid to Pavion. Solidyne did not have a bank account and it owed money to Pavion. After the sale of the Thermex-Thermatron subsidiary, Solidyne had no assets. At the time of trial, Solidyne was in the process of being dissolved.

Thermex-Thermatron continues to use Solidyne customer lists. The names of former Solidyne subsidiaries, including Sealomatic and Faratron, are on the window of its midwest sales office. The window is visible from the public street. Listings in telephone directories maintained and paid for by

Thermex-Thermatron continue to use the name Solidyne or one of its former divisions.

## *Defect in Product*

The thermal plate that injured Rosales's hand was held in place by a rod. The rod was manufactured in two sections and joined together by a nut. The bottom of the nut was to be welded to the lower portion of the rod. The upper portion of the rod had threads that would be screwed into the nut. To ensure that the upper portion of the rod would remain in the nut that fastens it to the lower portion, the design provided for a hole to be drilled through the nut and the upper portion of the rod so that a cotter pin could be inserted.

The machine that injured Rosales was manufactured in 1969. Perfect Plastics, Rosales's employer, acquired the machine in 1978. John Berkhout, an employee of Perfect Plastics, inspected the machine after the accident. He also compared the machine to another Thermatron machine owned by Perfect Plastics. Berkhout determined that the plate collapsed because the upper portion of the rod became unscrewed from the coupling nut. Berkhout noticed that the Thermatron machine had a cotter pin securing the upper rod into the nut. He compared that to the Sealomatic machine. The Sealomatic machine that injured Rosales had no holes drilled for a cotter pin.

Berkhout called a machinist, George Lucas, to drill holes in the rod and nut assembly on the Sealomatic for a cotter pin. Lucas testified there was no hole in the nut or rod before he drilled it.

Rosales called Kenneth Solomon, Ph.D., a safety engineer, as an expert witness. Solomon testified that the cause of the accident was a manufacturing defect: the absence of a hole and cotter pin in the nut and rod assembly. Solomon examined the machine. He testified there was no evidence the rod assembly had ever been replaced. Except for the lack of a hole and cotter pin the Sealomatic assembly was identical to that on a Thermatron machine purchased new by Perfect Plastics 11 years prior to the accident. The Thermatron machine operated for all those years without the need to replace the assembly.

## DISCUSSION

### I

Thermex-Thermatron contends it should not be held liable for the obligations of its predecessor. The ordinary rule is that where a corporation

purchases the assets of another corporation for adequate consideration, the purchaser does not become liable for the obligations of the seller. (See 9 Witkin, Summary of Cal. Law (9th ed. 1989) Corporations, § 20, p. 533.) The question presented by the parties here is whether the exception to that rule stated in *Ray* v. *Alad Corp., supra*, 19 Cal.3d 22 applies to this case.

In *Ray*, plaintiff claimed he was injured by a defective ladder. He sued Alad Corporation (Alad II) alleging strict tort liability. Alad II, however, had not manufactured the ladder. The ladder had been manufactured by another corporation with the same name (Alad I). Prior to the accident Alad II had purchased all of the assets of Alad I, including plant, equipment, inventory, trade name and goodwill. Alad II continued to manufacture the same line of ladders using the same name, the same equipment, designs and personnel, and it solicited Alad I's customers. There was no outward indication of any change in the ownership of the business.

■ In holding Alad II liable our Supreme court stated: "Justification for imposing strict liability upon a *successor* to a manufacturer under the circumstances here presented rests upon (1) the virtual destruction of the plaintiff's remedies against the original manufacturer caused by the successor's acquisition of the business, (2) the successor's ability to assume the original manufacturer's risk-spreading role, and (3) the fairness of requiring the successor to assume a responsibility for defective products that was a burden necessarily attached to the original manufacturer's good will being enjoyed by the successor in the continued operation of the business." (*Ray* v. *Alad Corp., supra*, 19 Cal.3d at p. 31.)

Here it appears from the evidence that the various Solidyne divisions, Sealomatic, Faratron, Thermex and Thermatron, had no independent existence apart from Solidyne itself. It further appears that all of Solidyne's heat sealing machine business was consolidated and incorporated as its Thermex-Thermatron subsidiary. There is nothing, such as the payment of adequate consideration, to suggest that the incorporation of Solidyne's heat sealing business insulated the subsidiary from liability for Solidyne's manufacture of a defective product. (See *Ray* v. *Alad Corp., supra*, 19 Cal.3d at p. 28.) Thus at least until the purchase of the subsidiary by TTI, Solidyne and its subsidiary must be considered as one for the purposes of liability. We now turn to the factors listed in *Ray* to determine whether the purchase insulated the new Thermex-Thermatron corporation from liability.

■ First, the sale of Solidyne's subsidiary to Thermex-Thermatron virtually destroyed Rosales's remedies against the original manufacturer. Pavion's administrator testified that the purchase price for the Thermex-Thermatron subsidiary was paid to Pavion because Solidyne owed Pavion

money. He said that after the sale Solidyne had no assets and was not capable of settling its debt to anyone. Solidyne did not even have a bank account.

Thermex-Thermatron argues that the trial court erred in refusing to admit evidence that Solidyne had notes from the sale of its subsidiaries and that at the time of the accident not all of the money on the notes had been paid. But the notes would be satisfied by payment to Pavion. The existence of the notes does nothing to change the administrator's ultimate conclusion that after the sale Solidyne had no assets to satisfy its obligations to anyone.

The next question is whether Thermex-Thermatron had the ability to assume its predecessor's risk-spreading role. The new Thermex-Thermatron corporation obtained the physical plant and manufacturing equipment of its predecessor. It also obtained its predecessor's knowledge of the business. The new corporation's owners were employees of the Solidyne subsidiary. Thermex-Thermatron had essentially the same ability as its predecessor to assess the risks. It also had the ability to continue manufacturing the machines to spread the risks. These were the factors used by the court in *Ray* to conclude the successor corporation had the ability to assume the risk-spreading role. (*Ray* v. *Alad Corp.*, *supra*, 19 Cal.3d at p. 33.)

Finally, it is fair to require Thermex-Thermatron to assume responsibility for its predecessor's defective products. Thermex-Thermatron continues to benefit from its predecessor's goodwill. It uses the name of Solidyne and its former divisions in advertising and, in particular, in telephone books. It continues to use customer lists compiled by Solidyne. Even the name Thermex-Thermatron is composed of the names of former Solidyne divisions and is the same name as the former Solidyne subsidiary.

## II

Thermex-Thermatron contends the trial court erred in instructing the jury on the elements of the *Ray* exception to the general rule that a successor corporation is not liable. Specifically Thermex-Thermatron complains about instructions that leave it to the jury to determine whether imposing successor liability is fair under the circumstances.

Thermex-Thermatron argues the question of fairness should be for the court, or, at a minimum, the court should have told the jury what facts would make it fair to impose liability on a successor corporation.

*Ray* did not specify whether the findings necessary to impose liability on a successor corporation were for the court or a jury. Thermex-Thermatron,

however, draws an analogy between the finding of fairness necessary for successor liability under *Ray* and the findings necessary to pierce a corporate veil. It points out that a determination whether to pierce a corporate veil is for the trial court. (Citing *Stark* v. *Coker* (1942) 20 Cal.2d 839, 846 [129 P.2d 390].)

The analogy is apt. A decision whether to pierce a corporate veil is for the trial court because it involves broad equitable considerations. (See *Stark* v. *Coker, supra,* 20 Cal.2d at p. 846.) The determination whether it is fair to impose successor liability involves similarly broad equitable considerations. (See *Ray* v. *Alad Corp., supra,* 19 Cal.3d at p. 34.) We believe the question whether it is fair to impose successor liability is exclusively for the trial court.

Thermex-Thermatron's alternative suggestion, that the court should have told the jury what facts would make it fair to impose successor liability, is without merit. Cases cited by Thermex-Thermatron in support of its suggested alternative involve breach of contract (*California W. D. Co.* v. *California M. O. Co.* (1918) 178 Cal. 337, 343 [177 P. 849]) and a determination whether a legal proceeding was commenced without probable cause (*Sheldon Appel Co.* v. *Albert & Oliker* (1989) 47 Cal.3d 863, 875-877, 884 [254 Cal.Rptr. 336, 765 P.2d 498]). Such cases do not concern the type of broad equitable considerations involved in a determination of fairness.

Although the trial court erred in instructing the jury, the error was harmless. The facts concerning successor liability were virtually undisputed. It was not a close question. Moreover, that the trial court granted sanctions for Thermex-Thermatron's unreasonable failure to admit to being a successor shows it agreed with the jury's determination.

Thermex-Thermatron argues that relying on the sanction award to show harmless error employs circular reasoning. It points to the trial court's statement in granting sanctions that the jury unanimously found successor liability. Thermex-Thermatron claims the trial court simply relied on the jury's determination. But the trial court referred to the unanimous verdict to show that the question was not close. There is no substantial likelihood the trial would have granted sanctions for unreasonably failing to admit to successor liability if the court had any serious doubt about the matter. Thermex-Thermatron cannot show a reasonable probability of a more favorable result in the absence of the error. (*Thomas* v. *Lusk* (1994) 27 Cal.App.4th 1709, 1720 [34 Cal.Rptr.2d 265].)

### III

Thermex-Thermatron contends there is no substantial evidence to show the machine that injured Rosales was in the same condition as when it

left the manufacturer. ■ In viewing the evidence, we look to the evidence supporting the prevailing party. (*GHK Associates* v. *Mayer Group, Inc.* (1990) 224 Cal.App.3d 856, 872 [274 Cal.Rptr. 168].) We discard evidence unfavorable to the prevailing party as not having sufficient verity to be accepted by the trier of fact. (*Ibid.*) Where the trial court or jury has drawn reasonable inferences from the evidence, we have no power to draw different inferences, even though different inferences may also be reasonable. (9 Witkin, Cal. Procedure (4th ed. 1997) Appeal, § 370, pp. 420-421.)

■ Rosales's expert witness testified he examined the machine and there was no evidence the rod assembly had ever been replaced. The rod assembly on the machine was, except for the lack of a hole and cotter pin, identical to the rod assembly on a machine Perfect Plastics purchased new from Solidyne. In 11 years of operation the new machine never needed the rod assembly replaced. That is sufficient to support the jury's finding that the rod assembly had not been replaced.

### IV

■ Thermex-Thermatron contends it is entitled to an offset for the full amount of Rosales's workers' compensation benefits. Here, instead of awarding Thermex-Thermatron the full amount of the benefits as an offset, the trial court followed *Torres* v. *Xomox Corp.* (1996) 49 Cal.App.4th 1 [56 Cal.Rptr.2d 455]. The trial court found that the economic damages were 17.7 percent of the total award and gave Thermex-Thermatron an offset of 17.7 percent of the workers' compensation benefits received by Rosales.

Prior to Proposition 51, a negligent third party was allowed an offset for the workers' compensation benefits paid to the plaintiff. This prevented double recovery under the then-existing joint and several liability rule. (See *Witt* v. *Jackson* (1961) 57 Cal.2d 57, 73 [17 Cal.Rptr. 369, 366 P.2d 641]; *Associated Construction & Engineering Co.* v. *Workers' Comp. Appeals Bd.* (1978) 22 Cal.3d 829, 841 [150 Cal.Rptr. 888, 587 P.2d 684].) Proposition 51, however, limited joint and several liability to plaintiff's economic damages. Nevertheless, Thermex-Thermatron argues that it should still be allowed the full deduction for workers' compensation benefits because the benefits are paid to compensate for economic losses.

The argument was rejected in *Torres* v. *Xomox Corp.*, *supra*, 49 Cal.App.4th at page 37 and *Scalice* v. *Performance Cleaning Systems* (1996) 50 Cal.App.4th 221, 226 [57 Cal.Rptr.2d 711], the only cases that have considered it. Contrary to Thermex-Thermatron's argument, the cases are not wrongly decided. The flaw in Thermex-Thermatron's argument is to

equate workers' compensation benefits with tort damages for economic losses. They are not equivalent. (See *Torres* v. *Xomox Corp., supra,* 49 Cal.App.4th at pp. 30-32; *Scalice* v. *Performance Cleaning Systems, supra,* 50 Cal.App.4th at pp. 229, 233.) The trial court did not err in following *Torres.*

Thermex-Thermatron's reliance on *Hernandez* v. *Badger Construction Equipment Co.* (1994) 28 Cal.App.4th 1791, 1803 [34 Cal.Rptr.2d 732], and *Poire* v. *C. L. Peck/Jones Brothers Construction Corp.* (1995) 39 Cal.App.4th 1832, 1842-1843 [46 Cal.Rptr.2d 631] is misplaced. Neither of those cases considered the question of apportionment. ■ A case is not authority for a proposition not considered. (*Torres* v. *Xomox Corp., supra,* 49 Cal.App.4th at p. 26.)

## V

■ Finally, Thermex-Thermatron contends the trial court abused its discretion in awarding sanctions for refusal to admit to successor liability.

Code of Civil Procedure section 2033, subdivision (o) allows the trial court to grant sanctions against a party who fails to admit pursuant to a request for admissions to the truth of any matter where the matter is proven to be true. The subdivision requires sanctions unless, among other exceptions, the admission sought was of no substantial importance or the party failing to make the admission had reasonable grounds to believe it would prevail on the matter.

■ If a party who denies a request for admission lacks personal knowledge but had available sources of information and failed to make a reasonable investigation, the failure will justify an award of sanctions. (*Brooks* v. *American Broadcasting Co.* (1986) 179 Cal.App.3d 500, 510 [224 Cal.Rptr. 838].) In order to be of substantial importance, a request for admission should have some direct relationship to an issue which, if not proven, would have altered the results of the case. (*Id.,* at p. 509.) There is no requirement, however, that the fact in question is one that would have altered the determination of the ultimate issue. (*Id.,* at p. 509, fn. 5.)

■ Here Rosales made 136 requests for admissions that directly related to the issue of successor liability. It is not necessary to review each request and response. The following examples will suffice:

Nineteen times Thermex-Thermatron responded that it was not Thermatron. But Thermex-Thermatron's attorney stated in his summation to the jury, "They are Thermatron. [¶] They testified they're Thermatron." Thermex-Thermatron even denied that it was listed in specified telephone directories under "Thermatron Division of Solidyne, Inc." The denial was quite obviously false.

In general, Thermex-Thermatron denied in its responses to the requests for admissions any knowledge of any of the operations of Sealomatic or any of the Solidyne divisions. This was even though Jack Palmer, the officer and part owner who answered the requests, began working for Sealomatic in 1960 and worked for Solidyne and its subsidiary. It was obvious at trial that Palmer had a great deal more information than his responses to the requests for admissions indicated. He tried to explain the discrepancy. He said that at trial he was answering from his personal knowledge, but in answering the requests for admissions he was acting as an officer of Thermex-Thermatron. He said he answered the requests for admissions honestly as far as all the owners of Thermex-Thermatron were concerned, but that if some of the owners did not know the answer, he did not admit to the request. He said he did not remember whether he undertook any investigation.

Palmer's testimony is tantamount to a confession that his responses to the requests for admissions were deceptive.

Thermex-Thermatron's claim that its liability under *Ray* was at least arguable misses the point. That the ultimate issue may be arguable does not justify deceptive responses to particular requests for admissions.

Thermex-Thermatron places much emphasis on the trial court's statement that "the defense admitted it was a successor in interest to the above entities in its opening statement." Thermex-Thermatron complains that its attorney made no such admission in the opening statement. But Palmer's testimony shows that his answers were deceptive. It is hard to think of a more compelling case for sanctions.

Litigation is supposed to be a search for truth. Here the defense abandoned its part of the search in favor of tactics that made plaintiff's pretrial discovery more burdensome. It is appropriate that the defense now pay for that burden.

The judgment is affirmed. Costs on appeal are awarded to respondent.

Stone (S. J.), P. J., and Coffee, J., concurred.