89 Cal.Rptr.2d 778 (2000)
75 Cal.App.4th 1213
MONARCH BAY II, Plaintiff and Appellant,
v.
PROFESSIONAL SERVICE INDUSTRIES, INC., Defendant and Respondent.
No. G021030.
Court of Appeal, Fourth District, Division Three.
October 27, 1999.
Irell & Manella, Steven L. Sloca, Richard J. McNeil, Los Angeles, and Joseph M. Freeman, Atlanta, GA, for Plaintiff and Appellant.
Schaffer & Lax, Clifford L. Schaffer and Amy L. Lewis, Los Angeles, for Defendant and Respondent.

OPINION
SILLS, P.J.
This appeal invites us to extend the so-called product line exception, which allows the imposition of strict liability for a defective product on the purchaser of the manufacturer's assets, to claims for mere negligence. We decline the invitation.
Monarch Bay II (MBII) is the owner of an apartment complex in Laguna Niguel that was severely damaged by a landslide. Alleging negligence on the part of the geotechnical engineering firms that certified the building site, MBII sought to recover from Professional Service Industries, Inc. (PSI), who purchased all of one engineering firm's assets. The trial court granted summary judgment against MBII, finding it could not recover from PSI because the asset purchase did not fall within the exceptions to nonliability enumerated in Ray v. Alad Corp. (1977) 19 Cal.3d 22, 136 Cal.Rptr. 574, 560 P.2d 3. We affirm.

*779 BACKGROUND
In the 1980s, a 450-unit luxury apartment complex was developed on the bluffs of Laguna Niguel. South Coast Geologic Services, Inc. provided soils engineering services on the project from 1986 to 1989, issuing a final compaction report and certifying the sites for the construction of three of the apartment buildings. After the buildings were built and occupied, PSI purchased all the assets of South Coast, including goodwill. PSI assumed South Coast's equipment and building leases and hired South Coast's two shareholders and principal geotechnical professionals, Maire Thornton and Carl Schrenk, as well as the rest of its employees. Thornton and Schrenk were told to encourage South Coast's customers to do business with PSI, and both signed a covenant not to compete for a two-year period.
In 1992, the hillside under the project gave way, damaging two buildings and forcing their evacuation. By this time, MBII had acquired the project from the previous owner. It brought suit against all parties involved in the geological investigation and construction of the project, and named PSI as South Coast's successor based on Ray v. Alad Corp., supra, 19 Cal.3d 22, 136 Cal.Rptr. 574, 560 P.2d 3. The trial court granted PSI's motion for summary judgment, finding the Ray exception to the non-liability of an asset purchaser for the liabilities of its predecessor applies only to claims based on strict products liability.

DISCUSSION
In Ray v. Alad Corp., supra, 19 Cal.3d 22, 136 Cal.Rptr. 574, 560 P.2d 3, the plaintiff was injured by a defective ladder manufactured by Alad Corporation (Alad I), which had been dissolved by the time of the injury. A successor corporation (Alad II) purchased Alad I's plant, trade name, inventory, and goodwill, and "continued to manufacture the same line of ladders under the Alad name, using the same equipment, designs, and personnel, and soliciting Alad I's customers through the same sales representatives with no outward indication of any change in the ownership of the business." (Id. at p. 25, 136 Cal.Rptr. 574, 560 P.2d 3.) The plaintiff asserted strict products liability against Alad II.
In reversing the summary judgment in favor of Alad II, the Supreme Court explained that as a general rule, a corporation purchasing the assets of another corporation is insulated from the debts and liabilities of its predecessor. "This insulation from its predecessor's liabilities ... has the undoubted advantage of promoting the free availability and transferability of capital." (Ibid.) The court enumerated the four long-established exceptions to the general rule: Liability will be imposed on the successor where: "(1) there is an express or implied agreement of assumption, (2) the transaction amounts to a consolidation or merger of the two corporations, (3) the purchasing corporation is a mere continuation of the seller, or (4) the transfer of assets to the purchaser is for the fraudulent purpose of escaping liability for the seller's debts. [Citations.]" (Id. at p. 28, 136 Cal.Rptr. 574, 560 P.2d 3.)
The court found none of these exceptions applied, explaining that the merger exception required a showing of consideration so inadequate that insufficient funds were available to satisfy claims of the seller's creditors, and the continuation exception required a showing of either inadequate consideration or that one or more persons were officers, directors, or stockholders of both the predecessor and the successor corporations. (Id. at pp. 28-29, 136 Cal.Rptr. 574, 560 P.2d 3.) Neither of these circumstances was present. Nevertheless, the court carved out an additional exception based on "the policies underlying strict tort liability for defective products." (Id. at p. 30, 136 Cal.Rptr. 574, 560 P.2d 3.)
The rule of strict tort liability for defective products was created to protect injured consumers who are powerless to *780 defend themselves and to spread the cost of such injuries throughout society. "`"The cost of an injury and the loss of time or health may be an overwhelming misfortune to the person injured, and a needless one, for the risk of injury can be insured by the manufacturer and distributed among the public as a cost of doing business." [Citation.]'" (Id. at pp. 30-31, 136 Cal.Rptr. 574, 560 P.2d 3.) The Ray court held these policies justified a new exception to the general rule (which has since become known as the product line exception) if the following circumstances were present: "(1) the virtual destruction of the plaintiff's remedies against the original manufacturer caused by the successor's acquisition of the business, (2) the successor's ability to assume the original manufacturer's risk-spreading role, and (3) the fairness of requiring the successor to assume a responsibility for defective products that was a burden necessarily attached to the original manufacturer's good will being enjoyed by the successor in the continued operation of the business." (Id. at p. 31, 136 Cal.Rptr. 574, 560 P.2d 3.)
MBII points out the trial court found it had presented sufficient evidence that would enable a jury to find in its favor on each of the three prerequisites to successor liability in Ray: the acquisition of South Coast by PSI had destroyed its remedy against South Coast; PSI has the ability to assume South Coast's riskspreading role; and PSI enjoyed the benefits of South Coast's goodwill by continuing to service its customers. It argues the Ray court did not intend that the exception would be limited to strict tort liability for defective products and should be construed to encompass claims for ordinary negligence.
Our reading of the Ray opinion suggests otherwise. The exception was based entirely on the policies underlying strict tort liability, not the policies of general negligence. The court carefully limited its newly created exception: "[T]his advantage [of availability and transferability of capital] is outweighed under the narrow circumstances here presented by considerations favoring continued protection for injured users of defective products.... [T]he instant claim of strict tort liability presents an exception to the general rule against imposition upon a successor corporation of its predecessor's liabilities...." (Id. at p. 25, 136 Cal.Rptr. 574, 560 P.2d 3; see also Beatrice Co. v. State Bd. of Equalization (1993) 6 Cal.4th 767, 777-778, 25 Cal.Rptr.2d 438, 863 P.2d 683.)
The argument that Ray should apply to all forms of tort liability was made and squarely rejected in Moloney v. American Pharmaceutical Co. (1988) 207 Cal.App.3d 282, 255 Cal.Rptr. 1. MBII contends the factual distinctions between Maloney and this case render Maloney inapplicable. It is true that the successor corporation in Maloney only purchased 10 percent of the predecessor's assets and did not acquire its equipment or employees. Furthermore, the predecessor was in bankruptcy when the assets were purchased, so there was no causal relationship between the acquisition and the destruction of plaintiff's remedies. But the Maloney court's conclusion that Ray applied only to strict products liability claims is unequivocal and has nothing do to with the factual distinctions. (Id. at pp. 289-290, 255 Cal.Rptr. 1.) Other cases interpreting Ray deal only with product liability claims. (See, e.g., Rosales v. Thermex-Thermatron, Inc. (1998) 67 Cal.App.4th 187, 78 Cal.Rptr.2d 861; Kaminski v. Western MacArthur Co. (1985) 175 Cal.App.3d 445, 220 Cal.Rptr. 895; Rawlings v. DM. Oliver, Inc. (1979) 97 Cal.App.3d 890,159 Cal.Rptr. 119.)
MBII argues there is no significant difference between a plaintiff injured by a defective product and one harmed by corporate negligence and urges us to broaden the Ray exception. We agree that in many respects, the distinction is without a difference. But we see no policy reasons to extend Ray's holding beyond strict tort liability. The criticisms levied at the product *781 line exception, which, of course, we are bound to follow under the principles of stare decisis, militate against eroding the traditional rule even further. "Predictability is vital in the corporate field. Unforeseeable alterations in successor liability principles complicate transfers and necessarily increase transaction costs. [Citations.] Major economic decisions, critical to society, are best made in a climate of relative certainty and reasonable predictability. [¶] The imposition of successor liability on a purchasing company long after the transfer of assets defeats the legitimate expectations the parties held during negotiation and sale. Another consequence that must be faced is that few opportunities would exist for the financially troubled company that wishes to cease business but has had its assets devalued by the extension of successor liability." (Polius v. Clark Equipment (3d Cir.1986) 802 F.2d 75, 83.)
The trend in other jurisdictions appears to be away from expansion of successor liability. Although the product line exception was adopted by a number of courts following the Ray opinion, "recent cases from a variety of states have rejected the product line exception in favor of retaining the traditional rule on non-liability." (Pollak, Successor Liability in Asset Acquisitions (Practising L.Inst.1998) Acquiring or Selling the Privately Held Company, pp. 77, 99, 101.)
The Ray court clearly intended the product line exception to be limited to the circumstances presented in that case, and we decline to extend the rationale to other circumstances. The judgment is affirmed. Respondent is entitled to costs on appeal.
RYLAARSDAM, J., and SEYMOUR, J.[*], concur.
NOTES
[*] Assigned by the Chairperson of the Judicial Council under article VI, section 6 of the California Constitution.