**KATZIR'S FLOOR AND HOME DE-SIGN, INC., d/b/a National Hardwood Flooring, Plaintiff–Appellee,**

v.

**M–MLS.COM; Peter Sommer, Defendants–Appellants.**

Katzir's Floor and Home Design, Inc.,
d/b/a National Hardwood Flooring,
Plaintiff–Appellee,

v.

M–MLS.com;  Peter Sommer,
Defendants–Appellants.

Nos. 03–55084, 03–55674.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Aug. 3, 2004.

Filed Dec. 22, 2004.

Jonathan B. Cole and Karen K. Coffin, Sherman Oaks, CA, for the defendants-appellants. With them on the briefs was Leslie G. Landau, San Francisco, CA.

Martin L. Horwitz, Beverly Hills, CA, for the plaintiff-appellee.

Before: CANBY, HANSEN,* and RAWLINSON, Circuit Judges.

HANSEN, Circuit Judge:

Peter Sommer and M–MLS.com appeal from the district court's amended judgment adding them as judgment debtors to a default judgment previously entered against M–MLS, Inc., Sommer's wholly-owned corporation. They also appeal from the district court's denial of their Federal Rule of Civil Procedure 60(b) motion challenging the underlying default judgment as it applied to them. We vacate the order denying the Rule 60(b) motion, and we reverse the amended judgment adding appellants as judgment debtors to the default judgment against M–MLS, Inc.

## I.

M–MLS, Inc., a Canadian corporation wholly owned by Peter Sommer, sold an end matcher machine (a woodworking machine) to Katzir's Floor for $87,200 in an "as is" condition. According to Katzir's Floor, the machine never worked properly. Katzir's Floor sued M–MLS, Inc. in California state court on July 29, 1999, seeking special damages of not less than $87,200, as well as general, incidental, consequential, and punitive damages. The action was removed to federal court on the basis of diversity.

M–MLS, Inc. initially answered and defended the lawsuit. Faced with financial

* The Honorable David R. Hansen, Senior United States Circuit Judge for the Eighth Circuit, sitting by designation.

difficulties, M–MLS, Inc. borrowed $50,000 from its former accountant, Elliott Fromstein, on August 28, 2000, giving Fromstein a secured interest in all of M–MLS, Inc.'s assets. M–MLS, Inc. discharged its attorneys in December 2000 and ceased defending the lawsuit. Default was entered against M–MLS, Inc. on March 9, 2001, for failing to secure new counsel, and a default judgment of $1,638,884 was entered on June 18, 2001, based on an affidavit submitted by Katzir's Floor's owner relating the lost sales Katzir's Floor suffered from its inability to meet orders requiring use of the machine.

Meanwhile, M–MLS, Inc. failed to make payments to Fromstein, and Fromstein initiated private involuntary receivership proceedings under Canadian law in June 2001. As provided under Canadian law, Fromstein appointed Sklar Receivers and Consultants, Inc. (Sklar) as the receiver. Sklar received three appraisals on M–MLS, Inc.'s assets that ranged between $11,000 and $14,000. The appraised assets included office furniture, machine brochures, and computers, but did not value any intangible assets, including a website used by M–MLS, Inc.

On July 9, 2001, Sklar sold all of the assets of M–MLS, Inc. to Scamper Enterprises, Inc., a separate corporation wholly owned by Sommer's wife, for $25,000. The proceeds, less a $5,000 receivership fee retained by Sklar, were paid to Fromstein as the secured creditor. The receiver's bill of sale to Scamper included the right to use the name "M–MLS" and all company software, telephone numbers, and intellectual property associated with the name M–MLS. Katzir's Floor was given notice and was aware of the receivership proceedings

in Canada but did not challenge the valuation or the sale to Scamper of all of M–MLS, Inc.'s assets.

Around the time that M–MLS, Inc. discharged its attorneys in December 2000, Sommer formed another Canadian corporation called M–MLS.com, an online brokerage company for new and used woodworking machinery. After Scamper bought the assets of M–MLS, Inc., Scamper allowed M–MLS.com to use the M–MLS website that Scamper had acquired as part of the receiver's sale.

In May 2002, Katzir's Floor moved to modify the federal court default judgment to reflect the true names of the debtor by adding Sommer as an individual and M–MLS.com. The district court granted the motion on the bases that Sommer was the alter ego of M–MLS, Inc. and M–MLS.com was the successor corporation of M–MLS, Inc. Accordingly, the court entered an amended judgment on December 19, 2002. Sommer and M–MLS.com filed a notice of appeal from the December 19, 2002, order on January 10, 2003. They also filed a Rule 60(b) motion and a Federal Rule of Civil Procedure 55(c) motion on March 10, 2003, challenging the underlying default judgment as it applied to them. The district court denied the motions, and Sommer and M–MLS.com appealed that order on April 21, 2003. We have consolidated the appeals.

## II.

### A. Denial of Rule 60(b) and Rule 55(c) Motions

Appellants argue on appeal that the district court abused its discretion, *see Floyd v. Laws*, 929 F.2d 1390, 1400 (9th Cir.1991) (standard of review), when it denied their Rule 60(b) motion.[1] According

---

**1.** Appellants also filed a Rule 55(c) motion, which allows a court to set aside a default for good cause shown. Once a default *judgment* has been entered, however, the aggrieved party must proceed under Rule 60(b) to have the judgment set aside. *See* Fed.R.Civ.P. 55(c). Thus, our analysis applies to both motions.

to appellants, adding them to the default judgment violates Federal Rule of Civil Procedure 54(c) and the due process rights it protects because the $1.6 million award greatly exceeded the $87,200 sought in the complaint. *See* Fed.R.Civ.P. 54(c) ("A judgment by default shall not be different in kind from or exceed in amount that prayed for in the demand for judgment."). We cannot reach this issue. The district court lacked jurisdiction to entertain the Rule 60(b) motion, which was filed after the notice of appeal had been filed, thereby stripping the district court of its jurisdiction. *See Williams v. Woodford,* 384 F.3d 567, 586 (9th Cir.2004) (vacating, for lack of jurisdiction, order denying Rule 60(b) motion where the motion was filed after the notice of appeal and movant did not follow the procedure for seeking a remand of the case back to district court); *Carriger v. Lewis,* 971 F.2d 329, 332 (9th Cir. 1992) (en banc) (same). We therefore vacate the district court's order denying appellants' Rule 60(b) motion.

B. Order Amending Judgment and Adding Sommer and M–MLS.com as Additional Judgment Debtors

■ We reject Katzir's Floor's frivolous argument that the appellants' notice of appeal from the amended judgment adding them as judgment debtors was untimely because it was not filed within 30 days of the original judgment (which would have required them to file the notice of appeal nearly 18 months before they were added as judgment debtors). A notice of appeal must be filed "within 30 days after the judgment or order appealed from is entered." Fed. R.App. P. 4(a)(1)(A). To the extent appellants seek review of the order adding them as judgment debtors, their notice of appeal was timely. We do agree, however, that the notice of appeal does not allow appellants to raise issues outside of the order adding them as judg-

ment debtors, and we limit our discussion accordingly.

■ California Code of Civil Procedure § 187 has been interpreted to grant courts " 'the authority to amend a judgment to add additional judgment debtors.' " *In re Levander,* 180 F.3d 1114, 1121 (9th Cir. 1999) (quoting *Issa v. Alzammar,* 44 Cal. Rptr.2d 617, 618 (Cal.Ct.App.1995) (parallel citation omitted)). This circuit has approved the use of the state procedure in federal court pursuant to Federal Rule of Civil Procedure 69(a). *See id.* at 1120–21 (noting that Rule 69(a) "permits judgment creditors to use any execution method consistent with the practice and procedure of the state in which the district court sits" (quoted source and internal marks omitted)). Section 187 is premised on the notion that the amendment "is merely inserting the correct name of the real defendant," *id.* at 1122 (quoted source and internal marks omitted), such that adding a party to a judgment after the fact does not present due process concerns. We review for clear error the district court's findings that a party is properly added to a previous judgment. *Id.* at 1123. We address the district court's application of § 187 to each appellant in turn.

1. Peter Sommer

■ A § 187 amendment requires "(1) that the new party be the alter ego of the old party *and* (2) that the new party had controlled the litigation, thereby having had the opportunity to litigate, in order to satisfy due process concerns." *Id.* at 1121 (quoted source and internal marks omitted). The district court found that Sommer was the alter ego of M–MLS, Inc. because "[h]e was the sole director, president, treasurer, and secretary of the corporation, and all the evidence reflects that Peter Sommer was in complete control of M–MLS." The district court also found

that M–MLS, Inc.'s corporate veil should be pierced to reach Sommer because "Sommer, perhaps single-handedly, controlled M–MLS, and now controls M–MLS.COM," and "Sommer formed the 'new' corporation . . . to continue conducting the same business he had with M–MLS, and to escape the judgment."

The district court clearly erred in finding that Sommer was the alter ego of M–MLS, Inc. solely because of the fact of control. "Alter ego is a limited doctrine, invoked only where recognition of the corporate form would work an *injustice* to a third person." *Tomaselli v. Transamerica Ins. Co.*, 25 Cal.App.4th 1269, 31 Cal.Rptr.2d 433, 443 (1994) (citation omitted) (emphasis in the original). The injustice that allows a corporate veil to be pierced is not a general notion of injustice; rather, it is the injustice that results only when corporate separateness is illusory. *See id.* (listing examples of the "critical facts" needed to establish that it would be inequitable to respect separate corporate identities "as inadequate capitalization, commingling of assets, [or] disregard of corporate formalities"). The district court made none of these critical findings before determining that Sommer was the alter ego of M–MLS, Inc. and that the corporate veil should be pierced. Had the district court considered these factors, the only evidence in the record would have supported a finding that the corporation was indeed a separate entity. M–MLS, Inc. maintained separate bank accounts from Sommer, and Sommer never commingled funds with M–MLS, Inc. or used its assets as his own. The mere fact of sole ownership and control does not eviscerate the separate corporate identity that is the foundation of corporate law. *See Dole Food Co. v. Patrickson*, 538 U.S. 468, 475, 123 S.Ct. 1655, 155 L.Ed.2d 643 (2003) ("The doctrine of piercing the corporate veil, however, is the rare exception, applied in the case of fraud or certain other exceptional circumstances."); 1 William Meade Fletcher et al., Fletcher Cyclopedia of the Law of Private Corporations § 41.35, at 671 (perm.ed., rev.vol.1999) ("[A]llegations that the defendant was the sole or primary shareholder are inadequate as a matter of law to pierce the corporate veil. Even if the sole shareholder is entitled to all of the corporation's profits, and dominated and controlled the corporation, that fact is insufficient by itself to make the shareholder personally liable." (footnotes omitted)).

The district court also erred in adding Sommer to the judgment without finding that Sommer's interests were protected in the underlying action. Section 187 "is an equitable procedure . . . [that] 'bind[s] new individual defendants where it can be demonstrated that in their capacity as alter ego of the corporation they in fact had control of the previous litigation, and thus were virtually represented in the lawsuit.'" *NEC Elecs. Inc. v. Hurt*, 208 Cal.App.3d 772, 256 Cal.Rptr. 441, 444 (Cal.Ct.App.1989) (quoting 1A Ballantine & Sterling, Cal. Corp. Laws (4th ed.) § 299.04, p. 14–45). The district court noted the second § 187 requirement that the new party had to have controlled the litigation such that it was "virtually represented," but failed to address it in its discussion as it applied to Sommer. Katzir's Floor suggests that Sommer controlled the litigation because he hired the attorneys for M–MLS, Inc., appeared at settlement conferences, financed the litigation, and discharged the attorneys. (Appellee's Br. at 42–43.)

The purpose of the requirement that the party to be added to the judgment had to have controlled the litigation is to protect that party's due process rights. Due process "guarantees that any person against whom a claim is asserted in a judicial proceeding shall have the opportunity to be heard and to present his de-

fenses." *Motores De Mexicali v. Superior Court*, 51 Cal.2d 172, 331 P.2d 1, 3 (1958) (citations omitted). A prior judgment against a corporation " 'can be made individually binding on a person associated with the corporation only if the individual to be charged ... had control of the litigation and occasion to conduct it with a diligence corresponding to the risk of personal liability that was involved.' " *NEC*, 256 Cal.Rptr. at 444 (quoting RESTATEMENT (SECOND) OF JUDGMENTS § 59, at 102 (1982)).

We believe that *NEC* represents the law that the California Supreme Court would apply if faced with this issue, and we therefore follow it. *See Glendale Assocs., Ltd. v. N.L.R.B.*, 347 F.3d 1145, 1154 (9th Cir.2003) (noting duty to determine how the highest court of the state would decide an issue of state law). In *NEC*, the Court of Appeals of California reversed the Santa Clara County Superior Court's judgment adding a shareholder to a judgment against his wholly-owned corporation where the shareholder's individual interests were not represented in the lawsuit. The corporation did not appear at trial or defend itself, despite a colorable defense, because it was on the verge of bankruptcy. The court reasoned that the sole shareholder, who was not a named party to the suit and had no personal liability, had no duty to intervene. *NEC*, 256 Cal.Rptr. at 442, 445 (relying on *Motores* ). It further found that the shareholder's interests were not represented during the lawsuit where the corporation had no incentive to, and in fact did not, defend given its pending bankruptcy. *Id.*

Similarly, Sommer was not named individually, knew M–MLS, Inc. was on the verge of dissolution through Canadian bankruptcy law, and had no personal duty to defend the underlying lawsuit. "To summarily add [corporate shareholders] to [a] judgment heretofore running only against [the corporation], without allowing them to litigate any questions beyond their relation to the allegedly alter ego corporation would patently violate [due process]." *Motores*, 331 P.2d at 3. The district court clearly erred in adding Sommer to the judgment against M–MLS, Inc.

### 2. M–MLS.com

The district court added M–MLS.com to the judgment against M–MLS, Inc. on the basis that M–MLS.com was the successor corporation of M–MLS, Inc. *See McClellan v. Northridge Park Townhome Owners Ass'n*, 89 Cal.App.4th 746, 107 Cal.Rptr.2d 702, 706–08 (Cal.Ct. App.2001) (utilizing § 187 to add successor homeowners' association to prior judgment against predecessor association). The general rule of successor liability is that a corporation that purchases all of the assets of another corporation is not liable for the former corporation's liabilities unless, among other theories, the purchasing corporation is a mere continuation of the selling corporation. *See Ray v. Alad Corp.*, 19 Cal.3d 22, 136 Cal.Rptr. 574, 560 P.2d 3, 7 (1977). To be a mere continuation, California courts require evidence of one or both of the following factual elements: (1) a lack of adequate consideration for acquisition of the former corporation's assets to be made available to creditors, or (2) one or more persons were officers, directors, or shareholders of both corporations. *Id.; see also Franklin v. USX Corp.*, 87 Cal. App.4th 615, 105 Cal.Rptr.2d 11, 18–19 (2001) (rejecting reliance solely on the second factor and noting that although the California Supreme Court in *Ray* listed the two additional factors in the disjunctive, all of the cases cited by the Supreme Court involved inadequate consideration). Inadequate consideration is an "essential ingredient" to a finding that one entity is a mere continuation of another. *See Maloney v. Am. Pharm. Co.*, 207 Cal.App.3d

282, 255 Cal.Rptr. 1, 4 (1988) (refusing to find one corporation liable for the debts of another as a successor corporation, even though the second corporation held itself out as a continuation of the first and shared common shareholders, where the second corporation paid adequate consideration for the assets of the first corporation). The district court relied on the transfer of the website and intellectual property to Scamper to support its finding of inadequate consideration.

This finding is erroneous for several reasons. First, the transfer was to Scamper, an intervening corporation, not to M–MLS. com. *See Maloney*, 255 Cal.Rptr. at 4 ("*[A] mere continuation contemplates a direct sale of assets* from the predecessor corporation to the successor corporation." (emphasis added)). Second, even if Scamper's subsequent grant of permissive use of the website to M–MLS.com could somehow make M–MLS.com the successor corporation of M–MLS, Inc. (a proposition of highly dubious merit), Katzir's Floor has failed to establish that the transfer to Scamper involved inadequate consideration. *See id.* at 3 n. 3 (holding that the party asserting the theory of successor liability bears the burden of establishing inadequate consideration). The district court noted that Scamper paid more than the appraised value of the remaining assets, and the court refused to admit evidence offered by Katzir's Floor to establish the value of the website. Thus, while the website was not included in the appraisal, no evidence as to its value was introduced, and there are no facts in the record to support the district court's conclusion that M–MLS, Inc.'s transfer of its website and intellectual property to Scamper satisfied the requirement that the transfer involved inadequate consideration.

Contrary to the successor homeowners' association in *McClellan*, there is no indication that M–MLS.com was formed improperly, or that M–MLS, Inc.'s receivership proceeding under Canadian law was unlawful or even tainted. *See* 107 Cal. Rptr.2d at 709 ("The effect of[the former association's] failure to disband properly is that notwithstanding the purported establishment of [the new association] as a separate new entity, [the new association] is essentially nothing more than the continuation of [the former association] under a different name."). Katzir's Floor had notice of the receivership proceedings and participated to some extent, but did not contest the valuation of the assets or the sale of the property to Scamper, as the district court recognized it had the right to do.

■■■ The requirement of inadequate consideration in a successor liability case is premised on the notion that when a successor corporation acquires the predecessor's assets without paying adequate consideration, the successor deprives the predecessor's creditors of their remedy. Where the predecessor files bankruptcy and its debts are discharged, however, it is the discharge and the lack of sufficient assets that deprive the predecessor's creditors of their remedy, not the acquisition of the predecessor's assets by another entity, in this case for more than their appraised value. *See Monarch Bay II v. Prof'l Serv. Indus., Inc.*, 75 Cal.App.4th 1213, 89 Cal. Rptr.2d 778, 780 (Cal.Ct.App.1999) (indicating that there must be a causal relationship between a successor's acquisition of assets (i.e., inadequate consideration), and the predecessor's creditors' inability to get paid). The district court clearly erred in finding that M–MLS.com was the mere continuation of M–MLS, Inc. where there is no evidence that M–MLS.com acquired M–MLS, Inc.'s assets for inadequate consideration.

### III.

For the foregoing reasons, we vacate for lack of jurisdiction the district court's order denying Sommer and M–MLS.com's Rule 60(b) motion, and we reverse the district court's order adding Sommer and M–MLS.com to the judgment against M–MLS, Inc.

Judgment in 03–55674 is VACATED. Judgment in 03–55084 is REVERSED.