836 P.2d 1034

**A.R. TEETERS & ASSOCIATES, INC., an Arizona corporation; Arlen R. Teeters, Plaintiffs–Appellants,**

v.

**EASTMAN KODAK COMPANY, a New Jersey corporation, Defendant–Appellee.**

**No. 1 CA–CV 88–579.**

Court of Appeals of Arizona, Division 1, Department D.

Aug. 20, 1992.

Thomas N. Swift, Mesa, for plaintiffs-appellants.

Arlen R. Teeters, in pro. per.

Lewis and Roca, by Susan M. Freeman, Thomas G. Ryan, Michael O. Miller and Christopher J. Brelje, Phoenix, for defendant-appellee.

## OPINION

TAYLOR, Judge.

A.R. Teeters & Associates ("Associates") and Arlen R. Teeters ("Teeters") appeal three judgments based on jury verdicts in

favor of Eastman Kodak Company ("Kodak"). Associates raises the following two issues: (1) whether the jury verdict in favor of Kodak on Associates' breach of contract claim is supported by the evidence; and (2) whether Associates, owned and managed by the same people as a predecessor company and serving the same customers with a similar product, is liable to Kodak, the product supplier, for all of the predecessor company's debts under the doctrine of successor liability. Teeters raises issues relating to the extent of his liability under the trust fund doctrine for loan repayments for monies borrowed by Teeters for the benefit of a corporation in which he was a principal officer.

For the reasons discussed hereafter, we affirm the breach of contract judgment in favor of Kodak, reverse the successor liability judgment against Associates, and reverse the breach of trust fund doctrine judgment against Teeters.

## FACTS AND PROCEDURAL HISTORY

In 1984, Teeters and Kodak's sales department ("Kodak Sales") negotiated a distributorship agreement. Under this agreement, Teeters would become a Kodak distributor for microfilm supplies and services as well as an exclusive broker for microfilm equipment in the Phoenix, Arizona, area. Drawing upon a seventeen-year business association with Kodak, Teeters and Wayman Tripp ("Tripp") formed A.R. Teeters & Company ("Company") with each owning a one-half interest. Teeters managed the day-to-day operations of the corporation while Tripp, an Illinois resident, provided both financial backing and consultation. Tripp remained in Illinois where he owned a similar Kodak microfilm distributorship.

Company's customer base grew rapidly. While Company's annual sales increased to over a million dollars, Company's account balance likewise increased, and Company began experiencing cash flow problems.

By the end of 1985, Kodak Credit imposed a credit cap on Company. Under the imposed cap, Company could not order Kodak products on credit until Company brought its balance under the $225,000.00 cap limit. This cap forced Company to secure additional financial capital on short notice.

In order to raise the needed capital, Teeters procured several short-term personal loans. Teeters then loaned these funds to Company and had Company issue promissory notes to himself.

Between December 1985 and May 1986, Teeters received $31,733.33 from Company as payment on the promissory notes. Upon receipt of these funds, Teeters repaid those who had extended him the personal short-term loans for Company's benefit. During this same time period Company paid substantial sums to Kodak Credit. In April 1986, Kodak Sales negotiated an agreement with Teeters and Tripp whereby Company transferred its Microfilm Purchase Plan agreement to Tripp so that Kodak's Arizona end-users would continue to receive Kodak's product. The record suggests that, from Kodak's perspective, this was the arrangement most likely to permit Company to pay its debt under an anticipated Chapter 11 bankruptcy plan and at the same time assure Kodak payment for current shipments. By transferring the agreement to Tripp, Kodak would ship its product through Tripp's Illinois distributorship to Company in Arizona. Although this new agreement would prevent further loss to Kodak, it became a matter of dispute whether the agreement was expressly conditioned upon satisfaction of Company's outstanding account balance. For several weeks, this agreement worked. Company ordered the product, Kodak shipped the product and invoiced Tripp, and Tripp paid the invoice.

In June 1986, Kodak Credit cut off future orders to Company under the Tripp subsidiary arrangement because Company had stopped paying on its debt, had not filed for bankruptcy, and had failed to reach an agreement to satisfy its debt to Kodak. Kodak Credit also threatened legal action if Company failed to meet a June 12, 1986, repayment deadline.

By Friday, June 13, 1986, Company voluntarily ceased all operations and surrendered most of its assets to its secured creditors. On Monday, June 16, 1986, Associates emerged, with Tripp owning sixty percent of the new company and Teeters owning the remaining forty percent. With the encouragement of Kodak Sales, Teeters and Tripp formed Associates as an Arizona corporation. Although many of Company's services were no longer offered, Associates was organized to serve the same customers in the same area with some of the same Kodak products. Associates was permitted to place orders under the Microfilm Purchase Plan agreement previously transferred from Company to Tripp.

Subsequently, most of Company's assets, which were surrendered to its secured creditors, were sold. Teeters purchased Company's furniture and fixtures and transferred them to Associates for its use. In addition, with Teeters' and Tripps' assistance, Company's equipment was sold to a St. Louis company. The proceeds were paid to First Interstate Bank, which held a security interest in the equipment. Immediately after the sale of the equipment, it was leased by the new owner to Associates. In January 1987, Tripp purchased · the equipment from the St. Louis company and likewise leased it to Associates. Tripp also purchased the accounts receivables from Company. Kodak has not contended that the assets of Company were sold for less than fair value.

In late June or early July, 1986, Kodak Credit notified Associates that Kodak would not honor any new orders and stopped all shipments to Associates. Kodak Credit refused all further business with any organization associated with Teeters until arrangements were agreed upon for payment of the overdue debt owed by Company.

On July 17, 1986, Kodak filed suit against Company for breach of contract, asking $217,992.07 in damages. Company admitted the breach *nolo contendere* but claimed that Company was due $7,938.93 in offsets or credits. On December 15, 1986, Associates sued Kodak for breach of contract. On July 2, 1987, the cases were consolidated. Kodak later amended its pleadings to allege personal liability of Teeters and Tripp under constructive fraud, statutory violations, and trust fund doctrine theories. Kodak also counterclaimed against Associates for Company's debt under fraudulent conveyance and successor liability claims. Company then asserted a counterclaim against Kodak for breach of contract.

At the conclusion of trial the jury returned a total of ten verdicts. The following verdicts are before us on appeal: (1) the judgment in favor of Kodak and against Associates on Associates' suit for breach of contract; (2) the judgment in favor of Kodak and against Associates for Company's debt under successor liability; and (3) the judgment in favor of Kodak and against Teeters for breach of the trust fund doctrine. With respect to the breach of contract and successor liability judgments, Associates was assessed damages of $210,053.14 and prejudgment interest of $42,010.62. With respect to the breach of the trust fund doctrine judgment, Teeters was assessed damages of $31,733.33 and prejudgment interest of $6,346.66. Associates, Company, Teeters, and Tripp filed motions for new trial and/or judgment notwithstanding the verdict. The motions were denied by the trial court.

## DISCUSSION

On appeal, we view the evidence in the light most favorable to sustaining the trial court's judgment. *Rogus v. Lords,* 166 Ariz. 600, 601, 804 P.2d 133, 134 (App.1991). We review the sufficiency of evidence presented at trial only to determine whether substantial evidence exists in the record to support the trial court's judgment. *Pugh v. Cook,* 153 Ariz. 246, 247, 735 P.2d 856, 857 (App.1987). Unless clearly erroneous, the trial court's findings of fact will not be set aside. *Schade v. Diethrich,* 158 Ariz. 1, 7, 760 P.2d 1050, 1056 (1988). In reviewing the trial court's findings on questions of law or mixed questions of law and fact, we are entitled to "draw [our] own legal conclusions from

facts found or inferred in the judgment of the trial court...." *Huskie v. Ames Bros. Motor & Supply Co.*, 139 Ariz. 396, 401, 678 P.2d 977, 982 (App.1984).

## A. Breach of Contract

■ We first address whether the record contains substantial evidence to support the jury's verdict and the trial court's judgment against Associates on its breach of contract claim against Kodak. Associates argues that (1) Tripp entered into an enforceable contract with Kodak, (2) this contract was not conditioned upon Company's satisfaction of its outstanding account balance, (3) Associates was a third-party beneficiary of the contract between Tripp and Kodak, (4) Kodak breached this contract by refusing to ship product to Associates, and (5) Company's failure to satisfy its outstanding account balance does not permit Kodak to repudiate its contract with Tripp. Our review of the record, however, reveals that what Kodak and Tripp intended and understood regarding the transfer of Company's contract to Tripp was sharply disputed. In particular, there was conflicting evidence pertaining to the resolution of Company's account balance and whether a Chapter 11 bankruptcy reorganization proceeding was a condition of the agreement.

In our resolution of this issue we are guided by the principle that "where the evidence in actions on or involving contracts is conflicting or admits of more than one inference, the question thereby raised is one of fact for the determination of the jury...." 17A C.J.S. *Contracts* § 610 (1963). The record shows the existence of a substantial factual dispute and that the question of fact was properly submitted to the jury. It is for the jury to weigh the evidence on a disputed question of fact and to judge the credibility of witnesses. *Pugh v. Cook*, 153 Ariz. at 247, 735 P.2d at 857.

Sufficient evidence exists to support the jury's verdict on this issue. Therefore, we affirm the verdict and the judgment against Associates on its breach of contract claim against Kodak.

## B. Successor Liability

We next address whether Associates is liable to Kodak for Company's past due balance under the successor liability doctrine. Successor liability is based upon the theory "that the assets of a private corporation constitute a trust fund for the benefit of its creditors...." *Valley Bank v. Malcolm*, 23 Ariz. 395, 406, 204 P. 207, 211 (1922). Whether a successor corporation will be liable for a predecessor corporation's debts "depends upon the nature of the transaction which gives rise to the change of ownership." *Ruiz v. ExCello Corp.*, 653 P.2d 415, 416 (Colo.Ct.App. 1982).

■ As a general rule, when a corporation sells or transfers its principal assets to a successor corporation, the latter will not be liable for the debts and liabilities of the former, unless

(1) there is an express or implied agreement of assumption, (2) the transaction amounts to a consolidation or merger of the two corporations, (3) the purchasing corporation is a mere continuation [or reincarnation] of the seller, or (4) the transfer of assets to the purchaser is for the fraudulent purpose of escaping liability for the seller's debts.

*Maloney v. American Pharmaceutical Co.*, 207 Cal.App.3d 282, 287, 255 Cal.Rptr. 1 (1989) (quoting *Ray v. Alad Corp.*, 19 Cal.3d 22, 136 Cal.Rptr. 574, 578, 560 P.2d 3, 7 (1977)); *accord Malcolm*, 23 Ariz. at 407, 204 P. at 212 (quoting *American Ry. Express Co. v. Commonwealth*, 190 Ky. 636, 228 S.W. 433, 437 (1920), *cert. granted*, *American Ry. Express Co. v. Commonwealth*, 42 S.Ct. 47 (1921), *error dismissed by American Ry. Express Co. v. Commonwealth*, 263 U.S. 674, 44 S.Ct. 4, 68 L.Ed. 500 (1923)); *Ruiz v. ExCello Corp.*, 653 P.2d at 416; *Evanston Ins. Co. v. Luko*, 7 Haw.App. 520, 783 P.2d 293, 295–96 (1989); *Hall v. Armstrong Cork, Inc.*, 103 Wash.2d 258, 692 P.2d 787, 789–90 (1984).

■ Kodak claims that Associates is a mere continuation or reincarnation of Company and therefore should be liable for Company's debt. A crucial factor in deter-

mining if a successor corporation is a mere continuation or reincarnation of a predecessor corporation is whether there is a substantial similarity in the ownership and control of the two corporations (e.g., identical directors, officers, stockholders, goods and services, and location). *See, e.g., Culinary Workers & Bartenders Union No. 596 Health & Welfare Trust v. Gateway Cafe,* 91 Wash.2d 353, 588 P.2d 1334, 1343 (1979). In addition, "[b]efore one corporation can be said to be a mere continuation or reincarnation of another it is required that there be insufficient consideration running from the new company to the old." *Maloney,* 207 Cal.App.3d at 287, 255 Cal.Rptr. 1 (quoting *Ortiz v. South Bend Lathe,* 46 Cal.App.3d 842, 120 Cal.Rptr. 556, 558 (1975), *disapproved on other grounds in Ray v. Alad Corp.,* 19 Cal.3d 22, 34, 136 Cal.Rptr. 574, 560 P.2d 3 (1977)); *see also Enos v. Picacho Gold Mining Co.,* 56 Cal. App.2d 765, 133 P.2d 663, 671 (1943) (characterizing "the lack of consideration running from the new company to the old" as "[a]n essential foundation" of the mere continuation theory).

Kodak, citing *Gateway Cafe,* 588 P.2d 1334, argues that because Associates has the same corporate owners and directors, serves the same customers with similar product under the same customer contracts within the same geographic area as Company, and holds itself out to its customers as the successor to Company, Associates is merely Company reincarnated. In *Gateway Cafe,* the Washington Supreme Court affirmed a successor liability judgment imposed upon a successor corporation "with substantially identical ownership, operating the identical business with identical employees in an identical location to [the predecessor corporation], [that had] received *all* [of the predecessor's] assets." *Id.,* 588 P.2d at 1343 (emphasis added).

■ Here, Associates was similar to Company in that it had identical directors, officers, and shareholders. Differences, however, existed between the two companies and their operation. Associates operated out of Teeters' home, not Company's location. Associates offered only micro-

film product, not the full line of services Company offered. None of Company's assets went to Associates except by lease after sale for fair value. Further, although Company ceased operations, Associates emerged without requiring Company to dissolve. In addition to these changes in the operational control, there was also a significant ownership change between Company and Associates.

Teeters and Tripp each owned a one-half interest in Company, with Teeters as the managing director. Each had equal decision-making power. During negotiations with Kodak before Company ceased operations, Kodak demanded that Tripp own at least sixty percent of any subsidiary before Kodak would transfer the Company purchase plan under a subsidiary arrangement. The reason for this arrangement was because Kodak Credit's supervisor "no longer wish[ed] to do business with Arlen [Teeters]." Thereafter, when negotiations to reduce Company's debt broke down, Tripp and Teeters organized Associates upon Kodak's explicit condition that Tripp own a sixty percent interest and possess the decision-making authority. The record reflects that Kodak Sales issued Associates a new customer number when it was formed and that Associates used this number when it attempted to order product.

It is apparent from the record that Kodak Sales was concerned with protecting its Arizona market and preserving the customers developed by Company. It is also apparent that Kodak Credit did not wish to do business with a company controlled by Teeters and that it desired the financial solidarity of Tripp's resources. With considerable input from Kodak, Associates was custom designed to meet these needs and emerged as a majority-owned subsidiary of Tripp's company, not as a continuation or reincarnation of Company. As so structured, Associates would not be liable for the debts of Company under the mere continuation exception to the successor liability doctrine.

■ In the absence of fraud, even if there was substantial similarity of ownership and control between Company and As-

sociates, this basis, alone, is not enough to impose the debts and liabilities of Company upon Associates under the transfer of assets exception if the transfer or purchase of Company's assets was based upon adequate consideration. *See* 19 Am.Jur.2d *Corporations* § 2711 (1986). Kodak has not suggested at trial nor in this appeal that the money paid for Company's assets was inadequate or insufficient consideration. *See Malcolm,* 23 Ariz. at 408, 204 P. at 212 ("[W]hen the sale is a *bona fide* transaction, and the selling corporation receives money to pay its debts, ... the purchasing corporation will not, in the absence of a contract obligation or actual fraud of some substantial character, be held responsible for the debts or liabilities of the selling corporation." (quoting *American Ry. Express Co. v. Commonwealth,* 228 S.W. at 437)).

■ We find nothing in the record to suggest that the transfer of Company's assets to Associates was for the fraudulent purpose of escaping liability for Company's debts or for less than adequate consideration. In summary, we find the evidence insufficient to support the jury's verdict in favor of Kodak under its successor liability claim.

### C. Trust Fund Doctrine

We next consider whether the record contains sufficient evidence to support the jury's verdict and the trial court's judgment against Teeters for breach of the trust fund doctrine. In the field of corporate law, the equitable trust fund doctrine has been the subject of considerable dispute. *See* 15A William Meade Fletcher, *Cyclopedia of the Law of Private Corporations* § 7369 (rev. perm. ed. 1990) [hereinafter 15A Fletcher]. Despite the wide criticism and repudiation of the doctrine in some jurisdictions, it remains valid law in Arizona. *Drew v. United States,* 367 F.2d 828, 830, 177 Ct.Cl. 458 (1966); *Norris Chem. Co. v. Ingram,* 139 Ariz. 544, 548, 679 P.2d 567, 571 (App.1984). The doctrine was judicially created to ensure that all creditors' claims are first equitably satisfied before stockholders may claim their

rights upon the assets of an insolvent corporation. 15A Fletcher, *supra,* § 7371; *see Wood v. Drummer,* 30 F.Cas. 435, 436 (C.C.D.Maine 1824) (No. 17,944). The doctrine is explained as follows:

> The theory of the trust fund doctrine is that all of the assets of a corporation, immediately on its becoming insolvent, exist for the benefit of all of its creditors and that thereafter no liens nor rights can be created either voluntarily or by operation of law whereby one creditor is given an advantage over others.

15A Fletcher, *supra,* § 7369; *see Norris Chem. Co.,* 139 Ariz. at 548, 679 P.2d at 571.

■ To prevail on its trust fund doctrine claim, Kodak first must prove that (1) corporate assets were transferred to Teeters, (2) the transfer of corporate assets occurred while the corporation was insolvent, and (3) the transfer preferred Teeters to the disadvantage of other creditors of the same priority. Liability, if established, is limited to the value of the assets received by the director, officer, or stockholder. *Realty Exchange Corp. v. Cadillac Land & Dev. Co.,* 13 Ariz.App. 232, 234, 475 P.2d 522, 524 (1970) (citing 3 William Meade Fletcher, *Cyclopedia on the Law of Corporations,* § 1186, p. 899).

■ Teeters acknowledges that between December 31, 1985, and May 1986, he received $31,733.33 as payment on several promissory notes while he was serving as a director, officer, and stockholder of Company. Teeters contends, however, that Company was not insolvent at the time the loan payments were received by him. Teeters further argues that he did not prefer himself over other creditors.

Under Ariz.Rev.Stat.Ann. ("A.R.S.") § 10–002(12), "insolvent" is defined as the "inability of a corporation to pay its debts as they become due in the usual course of its business." The trial court instructed the jury that a corporation is insolvent when it either has ceased to pay its debts in the ordinary course of business, cannot pay its debts as they become due, or its liabilities are greater than its assets.

Kodak presented expert testimony that Company's assets were insufficient to pay its debts as of December 31, 1985. In addition, by letter to his banker dated January 31, 1986, Teeters reviewed Company's December 31 financial statement and acknowledged that it appeared that Company would not be able to continue business and that his accountant suggested he consider bankruptcy. The jury weighed the evidence, assessed the expert's credibility, and concluded that Company was in fact insolvent at that time. We find in the record sufficient credible evidence to support the jury's finding and the trial court's judgment that Company was insolvent when it repaid Teeters.

Teeters urges that even if Company was insolvent, he did not prefer himself over Kodak by repaying himself monies he had recently loaned to Company. Teeters argues that (1) he was a mere "transfer agent" between the lenders and Company, and (2) Company made substantial payments to Kodak at the same time Teeters was repaid. Thus, Teeters contends, he was not preferred as a creditor over Kodak.

 The thrust of Teeters' first argument is that in order to assist Company, he borrowed a total of $30,000.00 from Valley National Bank and his mother and that the money was immediately given to Company for its use. The record supports Teeters' account of the creation of these loans. Teeters argues that the lenders were willing to loan to him but not to Company and that his role was that of a "transfer agent." Teeters testified that the sum of $31,733.33 received by him was to repay the principal and interest of the sums he had borrowed and "reloaned to Company." Teeters points out that he made no effort to repay himself some $69,000.00 plus interest for additional sums he had personally loaned to Company.

Teeters, however, offers no authority to support his argument that as a "transfer agent" he is exempt from trust fund liability. Teeters' transfer of these funds to his mother and the bank to satisfy outstanding personal notes does not change the fact that Company funds were used to satisfy a debt to a director, officer, and major stockholder. Whether the loans were made to Teeters or to Company through Teeters, he remained personally liable to the lenders. If Teeters removed that liability by preferring himself over other creditors, he derived a benefit in violation of his fiduciary duties as trustee of an insolvent company's assets. *See Norris Chemical Co.*, 139 Ariz. at 548, 679 P.2d at 571.

Appellant next argues that he received no preference because Kodak received substantial payments during the time his loans were repaid by Company. On appeal, Teeters points to Kodak's billing statements that show Company's account balances as follows:

| | |
|---|---|
| December 1, 1985 | $207,822.47 |
| January 1, 1986 | $259,293.60 |
| June 1, 1986 | $217,992.07 |

From January 1, 1986, to June 1, 1986, Company was both paying on its antecedent debt and ordering new product. Approximately $70,000.00 was paid on the outstanding account balance, $42,879.38 in January and $27,259.79 in February. At the same time, new charges were added, keeping the balance due in excess of $200,-000.00. After Company defaulted on its February 1986 payment, Kodak advised Company that it would ship new orders on a pre-pay arrangement only. Between February and May 1986, Company paid Kodak $218,972.85 in certified checks for orders shipped on a pre-pay basis. During this same time, Company also made three payments to Kodak totaling $74,259.79 with instructions to apply it to the outstanding account balance. Kodak, however, applied $27,259.79 towards the account balance and $47,000.00 towards new purchases.

 The question we therefore must address is whether the $31,733.33 in loan repayments to Teeters resulted in a preference to the disadvantage of Company's creditors of the same priority. When a corporation is solvent, directors and officers are entitled to make loans to their corporations and to collect bona fide corporate debts which are owed to them in the

same manner as other creditors. 15A Fletcher, *supra*, § 7467; *see Robson v. Smith*, 777 P.2d 659, 661–62 (Alaska 1989). When a corporation becomes insolvent, its directors and officers become fiduciaries of the corporate assets for the benefit of creditors. Fletcher, *supra*, § 7469; *see Collie v. Becknell*, 762 P.2d 727, 731 (Colo.Ct.App. 1988). As fiduciaries, they are prohibited from receiving any preference over other creditors. 15A Fletcher, *supra*, § 7469. A preference is a transfer or encumbrance of corporate assets made while the corporation is insolvent and which has the effect of enabling any creditor, including a director or officer, to receive a greater percentage of his debt than other creditors of the same class or priority. *Kniffin v. Colorado Western Development Co.*, 622 P.2d 586, 592 (Colo.Ct.App.1980); 15A Fletcher, *supra*, § 7434; 18B Am.Jur.2d *Corporations* § 2155 (1985) Thus, in the absence of a prior perfected secured interest or priority claim, a director or officer is entitled only to share proportionately in the distribution of assets with other general unsecured creditors. 15A Fletcher, *supra*, § 7469.

■■■■■ No preference is created when an insolvent corporation assigns, mortgages, or conveys corporate property to a director or officer to secure a loan or advance if such transaction is entered in good faith and security is given contemporaneously with the loan or advance. *Id.* § 7429; *see generally* R.D. Hirsh, Annotation, *Validity of Security for Contemporaneous Loan to Corporation by Officer, Director, or Stockholder*, 31 A.L.R.2d 663 (1953). A preference is created, however, when an insolvent corporation repays a loan or advance or grants a security interest to a director or officer for a preexisting debt. *See* 15A Fletcher, *supra*, § 7475; 18B Am.

Jur.2d *supra*, § 2158. In all cases, a preferred director or officer has the burden of proving that a preference is valid. *Id.* § 7602.

■■■ In his pleadings and trial testimony, Teeters asserted that the $30,000.00 in loans was secured by Company's inventory and accounts receivable. This position was supported by the notes admitted into evidence and does not appear to be disputed. Teeters, however, did not offer an instruction informing the jury of the preference given secured creditors in the payment of claims, nor has Teeters asserted his status as a secured creditor on appeal. Therefore, any claim that he is a secured creditor of Company is waived. *See Van Loan v. Van Loan*, 116 Ariz. 272, 274, 569 P.2d 214, 216 (1977). We accordingly treat Teeters as a general unsecured creditor. Since Company was insolvent at the time corporate assets were transferred, Teeters is entitled only to share proportionately in the distribution of corporate assets with other general unsecured creditors. If Teeters acquired a greater or disproportionate share of Company's general assets by the transfer, the excess loan repayments will be deemed an invalid preference, subject to a proportionate distribution to all creditors, including Kodak and Teeters.[1]

Kodak's position at trial and on appeal is that to prevail on its claim, it need only show that Teeters was a corporate officer, that Company was insolvent, and that Teeters received corporate assets during insolvency. In essence, its position is that payment by an insolvent corporation on its debt to an officer is synonymous with preference. Adopting Kodak's erroneous position, the trial court refused Teeters' proposed jury instruction defining preference as a disproportionate payment and also re-

---

1. The parties did not raise, at trial or on appeal, the issue of whether Kodak may properly sue Teeters to recover on its individual claim against Company, without bringing an action for the benefit of all creditors. *See* 18B Am. Jur.2d *Corporations* § 2166 (1985). We therefore do not consider the issue. We note that other jurisdictions have held that the trust fund doctrine precludes individual action by creditors for their own account and that there is no basis in law for an officer to pay the corporate debt owed to a specific creditor. *Block v. Olympic Health Spa*, 24 Wash.App. 938, 604 P.2d 1317 (1979); *Portage Insulated Pipe Co. v. Costanzo*, 114 N.J.Super. 164, 275 A.2d 452 (App.Div.1971). For the same reason, we do not determine whether such an action must be brought by or through the insolvent corporation or its receiver as a necessary party. *See Underwood v. Stafford*, 270 N.C. 700, 155 S.E.2d 211 (1967).

fused to permit the jury to establish a dollar amount if in fact it found a preference.

■ Treating the $30,000.00 in loans to Teeters as unsecured and accepting December 31, 1985, as the point in time when Company was insolvent, it appears that Teeters received payment of approximately thirty percent of Company's total indebtedness to him. During this same period, Company paid approximately twenty-seven percent or more of its January 1, 1986, balance due Kodak, depending on the treatment of the $74,259.79 payment. The jury was not instructed on that issue or on the effect of subsequent, unpaid purchases, nor have these issues been briefed for our benefit. We are not suited to review the mass of accounting materials in the record to ascertain whether either party in fact received a greater or disproportionate share of the corporate assets than the other.

No meaningful jury verdict could be returned unless the jury was presented sufficient evidence and properly instructed so as to permit it to determine the amount of each creditor's claim, the amount of payments on those claims, and the comparable proportionality of those payments. The burden rested on Kodak to properly present its claim to the jury. This it failed to do. Our Supreme Court has stated that a new trial is not required "[w]hen a party has full and complete opportunity to develop its case but does not do so...." *Crouch v. Truman,* 84 Ariz. 360, 362, 328 P.2d 614, 615 (1958); *United Producers & Consumers Coop. v. O'Malley,* 103 Ariz. 26, 28, 436 P.2d 575, 577 (1968). Accordingly, we reverse the judgment in favor of Kodak on its trust fund claim without provisions for a new trial.

Last, Teeters argues that the jury verdicts are inconsistent. He urges that for the jury to return favorable verdicts on Kodak's claims based upon theories of director's statutory liability and constructive fraud, together with a finding of liability but no damages on Kodak's fraudulent conveyance claim against Associates, is a contradiction to the jury's finding of a violation of the trust fund doctrine. We disagree. The claims are separate and each possess distinct elements. Trust fund liability is premised upon a finding of insolvency. A director's statutory liability under A.R.S. § 10–048(A)(3) requires a finding of distribution of corporate assets "during the liquidation of the corporation."

The facts of this case support a jury determination of insolvency but not liquidation at the time payments were made to Teeters. Such a determination is sufficient to render the verdicts consistent. Thus, the two verdicts are not "necessarily ... based on inconsistent findings of fact" and should not be disturbed. *Eldredge v. Miller,* 78 Ariz. 140, 146, 277 P.2d 239, 243 (1954) ("To vitiate two verdicts because of inconsistency, they must necessarily be based on inconsistent findings of fact.").

Similarly, a verdict in favor of Teeters on Kodak's claim of constructive fraud is not inconsistent with the trust fund verdict. The trust fund doctrine is not premised upon a finding of fraud but instead is founded upon a judicially-created duty.

### CONCLUSION

For the foregoing reasons, we (1) affirm the judgment for Kodak under Associates' breach of contract claim, (2) reverse the judgment against Associates for Company's debt under Kodak's successor liability claim, and (3) reverse the judgment against Teeters under Kodak's trust fund doctrine claim. We remand to the trial court with directions to enter judgment in favor of Associates on the successor liability claim and in favor of Teeters on the trust fund doctrine claim.

In the exercise of our discretion and consistent with this opinion, we vacate the trial court's award of attorneys' fees to Kodak under the successor liability claim. We further deny each request for costs and attorneys' fees on appeal pursuant to the discretion granted us under Rule 21, Arizona Rules of Civil Appellate Procedure, and A.R.S. § 12–341.01(A).

BROOKS, P.J., and FIDEL, J., concur.