63 P.3d 1040

**John Scott WINSOR, Plaintiff–Appellant,**

v.

**GLASSWERKS PHX, L.L.C., a California limited liability corporation, Defendant–Appellee.**

**No. 1 CA–CV 01–0395.**

Court of Appeals of Arizona, Division 1, Department C.

Feb. 4, 2003.

Review Denied June 30, 2003.

---

Shultz & Rollins, LTD. By James E. Marner, Tucson, Attorneys for Plaintiff–Appellant.

Jardine, Baker, Hickman & Houston By Gerald T. Hickman, John Drazkowski, Phoenix, Attorneys for Defendant–Appellee.

## OPINION

BARKER, Judge.

¶1 We are invited in this case to expand the scope of products liability actions to include successor corporations not involved in placing the product into the stream of commerce. We decline to do so, determining that any such modification of Arizona law is best left to the legislature.

### FACTUAL AND PROCEDURAL BACKGROUND

¶2 On June 9, 1997, John Scott Winsor ("Winsor") was at a job site installing a pane of glass manufactured by Labrador Glass Specialties, d/b/a, LabGlas, Inc. ("LabGlas"). The pane of glass shattered and Winsor was seriously injured. In 1995, approximately two years prior to Winsor's injury, LabGlas entered into a purchase agreement to the effect that Glasswerks PHX, L.L.C. ("Glasswerks") became the owner (with limited exceptions) of all LabGlas' assets, tangible or intangible.[1] The purchase agreement pro-

---

1. Glasswerks, L.L.C., a California corporation, and LabGlas entered into an asset purchase agreement. Glasswerks, L.L.C. formed LabGlas, L.L.C., a wholly owned subsidiary, to receive the assets of LabGlas. LabGlas, L.L.C. was subsequently dissolved and its assets incorporated into defendant Glasswerks PHX, L.L.C. LabGlas retained its cash on hand, accounts receivable, and

vided that Glasswerks "will not assume or be responsible for any liabilities or obligations of [LabGlas]" except those debts expressly stated. The agreement also provided that it was to "be governed by and construed in accordance with the laws of the State of California applicable to contracts made."

¶ 3 After his injury, Winsor filed a products liability action against Glasswerks as LabGlas' successor. Glasswerks moved for summary judgment relying on the general rules of successor liability recognized in Arizona. *A.R. Teeters & Assocs., Inc. v. Eastman Kodak Co.*, 172 Ariz. 324, 836 P.2d 1034 (App.1992). The general rule is that a successor corporation is not liable unless certain exceptions are met. For example, a successor is liable if the successor is "a mere continuation or reincarnation of the seller" or if "the transfer of assets to the purchaser is for the fraudulent purpose of escaping liability for the seller's debts." *Id.* at 329, 836 P.2d at 1039.

¶ 4 Winsor did not argue to the trial court under *Teeters*, and does not argue here, that Glasswerks is a "mere continuation" or that the purchase agreement was for the "fraudulent purpose of escaping liability" or that some other exception recognized in Arizona applies. Rather, Winsor argued to the trial court that California law applied and that Glasswerks was liable under the product line exception to the general rule as recognized in California. *Ray v. Alad Corp.*, 19 Cal.3d 22, 136 Cal.Rptr. 574, 560 P.2d 3, 11 (Cal.1977).

¶ 5 The trial court determined that Arizona law, rather than California law, applied and granted Glasswerks' motion for summary judgment. Winsor then filed a motion for reconsideration urging the trial court to expand Arizona law to recognize the product line exception first announced in *Ray*. The trial court denied the motion. Winsor timely appealed. We have jurisdiction pursuant to Arizona Revised Statutes (A.R.S.) sections 12–120.21 (1992) and 12–2101(C)(1994).

cash deposits. Glasswerks paid $875,000 to LabGlas, which took the form of Glasswerks assuming an $875,000 debt that LabGlas owed to M & I Thunderbird Bank. To the extent that there are factual discrepancies in the record, we take the

## DISCUSSION

¶ 6 This court reviews a summary judgment de novo. *Great Am. Mortg., Inc. v. Statewide Ins. Co.*, 189 Ariz. 123, 125, 938 P.2d 1124, 1126 (App.1997). Considering the facts in the light most favorable to the non-moving party, we will affirm if there is no material factual issue and the moving party is entitled to judgment as a matter of law. *Estate of Hernandez v. Flavio*, 187 Ariz. 506, 509, 930 P.2d 1309, 1312 (1997).

### 1. Choice of Law.

■■■ ¶ 7 The first issue we must decide is whether Arizona or California law applies in this products liability action. Winsor argues that the choice of law provision in the purchase agreement between Glasswerks and LabGlas requires that California law apply to his claim. We disagree.

¶ 8 The choice of law provision in this matter applies to the *contractual* relationship between *LabGlas* and Glasswerks, not the *tort* claim brought by *Winsor* against Glasswerks. The contractual provision provides as follows:

Th[e] Agreement is to be governed by and construed in accordance with the laws of the State of California *applicable to contracts made and to be performed* wholly within such State, without regard to the conflicts of laws principles thereof.

(Emphasis added.)

■■■ ¶ 9 Arizona courts will apply the law of the state chosen by the parties to govern their *contractual* relationship as long as the chosen law has some nexus with the parties or the contract. *Nanini v. Nanini*, 166 Ariz. 287, 290, 802 P.2d 438, 441 (App. 1990). However, Winsor's claims arise from tort law. "Claims arising in tort are not ordinarily controlled by a contractual choice of law provision. Rather, they are decided according to the law of the forum state." *Sutter Home Winery, Inc. v. Vintage Selections, Ltd.*, 971 F.2d 401, 407 (9th Cir.1992)

facts in the light most favorable to Winsor, the party against whom summary judgment was granted. *Estate of Hernandez v. Flavio*, 187 Ariz. 506, 509, 930 P.2d 1309, 1312 (1997).

(internal citation omitted); *see also S. Union Co. v. Southwest Gas Co.*, 165 F.Supp.2d. 1010, 1028 (D.Ariz.2001).

¶ 10 The Ninth Circuit has recognized that contractual choice of law provisions may apply to tort claims under certain circumstances: "Whether a [choice of law provision] applies to tort claims depends on whether resolution of the claims relates to interpretation of the contract." *Manetti–Farrow, Inc. v. Gucci Am., Inc.*, 858 F.2d 509, 514 (9th Cir.1988). Here, Winsor's claim is for personal injuries based upon a product liability action. Winsor's tort claim arises independently of the contract between LabGlas and Glasswerks. Conversely, in *Manetti–Farrow,* the court concluded that the tort claims could "not be adjudicated without analyzing whether the parties were in compliance with the contract." *Id.* Thus, contrary to Winsor's assertion, the *Manetti–Farrow* holding does not persuade us that California law applies.

¶ 11 Without an applicable choice of law provision, Arizona courts follow the Restatement (Second) of Conflict of Laws (1971) (Conflict of Laws Restatement) to determine the controlling law. *Bates v. Superior Court (Nationwide Ins. Co.)*, 156 Ariz. 46, 48, 749 P.2d 1367, 1369 (1988). Cases sounding in tort should be resolved under the law of the state having the most significant relationship to both the occurrence and the parties with respect to the particular issue. Conflict of Laws Restatement § 145(1). Factors taken into consideration include: (a) the place where the injury occurred, (b) the place where the conduct causing the injury occurred, (c) the domicile, residence, place of incorporation, and place of business of the parties, and (d) the place where the relationship, if any, between the parties is centered. Conflict of Laws Restatement § 145(2); *Bates,* 156 Ariz. at 49, 749 P.2d at 1370.

¶ 12 Application of these factors as follows leads us to conclude that Arizona law should apply. Winsor was injured in Arizona. The conduct causing the injury, *i.e.,* the production of allegedly defective glass, occurred in Arizona. Winsor lives in Arizona and Glasswerks does business in Arizona. Although Glasswerks is incorporated in California, the place of business is generally a more important contact than the place of incorporation, and in cases involving personal injury to the plaintiff, the residence of the plaintiff is given greater weight. Conflict of Laws Restatement § 145(2), cmt. e; *Bates,* 156 Ariz. at 50, 749 P.2d at 1371. As to the factor that requires us to analyze the parties' relationship, the only relationship the parties share is this litigation. Therefore, this factor is not applicable.

¶ 13 Accordingly, applying the factors from the Conflict of Laws Restatement and *Bates,* we conclude that Arizona has the most significant relationship to both the parties and the occurrence with respect to this products liability action. Arizona law applies.

## 2. Successor Liability in Products Liability Actions.

### A. Teeters, the Restatement, and the Majority Rule.

¶ 14 The general rule of successor liability in Arizona, as contained in *Teeters,* is that a sale of the principal assets of a corporation does not result in imposition of successor liability unless (stated generally) there is (1) an agreement, (2) a merger or consolidation, (3) a "mere continuation" or (4) fraud. *Teeters* described the rule and exceptions as follows:

> [W]hen a corporation sells or transfers its principal assets to a successor corporation, the latter will not be liable for the debts and liabilities of the former unless[:]
>
> (1) there is an express or implied agreement of assumption,
>
> (2) the transaction amounts to a consolidation or merger of the two corporations,
>
> (3) the purchasing corporation is a mere continuation [or reincarnation] of the seller, or
>
> (4) the transfer of assets to the purchaser is for the fraudulent purpose of escaping liability for the seller's debts.

*Teeters,* 172 Ariz. at 329, 836 P.2d at 1039 (citations omitted).

¶ 15 Winsor claims that *Teeters* is neither persuasive nor binding as it did not involve policy considerations unique to products lia-

bility. This argument, however, must be tempered with the realization that the rule specifically formulated for successor liability in products liability actions, Restatement (Third) of Torts: Products Liability (1998) (Restatement) § 12, is essentially the same as that announced earlier in *Teeters*. Restatement § 12 provides:

> A successor corporation or other business entity that acquires assets of a predecessor corporation or other business entity is subject to liability for harm to persons or property caused by a defective product sold or otherwise distributed commercially by the predecessor if the acquisition:
>
> (a) is accompanied by an agreement for the successor to assume such liability; or
>
> (b) results from a fraudulent conveyance to escape liability for the debts or liabilities of the predecessor; or
>
> (c) constitutes a consolidation or merger with the predecessor; or
>
> (d) results in the successor becoming a continuation of the predecessor.

Not only does Restatement § 12 parallel the rule announced in *Teeters*, it represents the position that a majority of jurisdictions have taken on this issue. See Restatement § 12, Reporters' note cmt. c. (listing jurisdictions rejecting product line and continuity of enterprise exceptions to the general rule). With regard to this issue, as noted, we do not write on a clean slate. At least thirty-one jurisdictions have considered successor liability in some manner in a products liability setting. *Id.* While we decline to enter into the debate as to exactly how many jurisdictions have rejected the proposed exceptions, the substantial majority have concluded that an approach similar to *Teeters* and the Restatement is appropriate.[2]

¶ 16 The key principles on which the majority rule and the Restatement are based, and with which *Teeters* is consistent, are (1)

---

**2.** We make no attempt to compile an exhaustive, current listing of cases considering the proposed exceptions, as it is not critical to our analysis. The cases collected in this footnote are considered to support the Restatement and *Teeters* rule. *But see* Richard L. Cupp, Jr., *Redesigning Successor Liability*, 1999 U. Ill. L.Rev. 845 (1999) for a contrary view of certain of the cases. As noted in *Savage Arms Inc. v. Western Auto Supply Co.*, 18 P.3d 49, 56 (Alaska 2001), which adopted the continuity of enterprise exception, "[a]lthough there is some dispute about exactly how many jurisdictions have decided the issue, it is clear that a majority of jurisdictions have not adopted the 'continuity of enterprise' exception." (Citation omitted.) With that caveat, the following are jurisdictions that have been considered to have adopted the four prong test similar to Restatement § 12 and *Teeters*: Arkansas, *Swayze v. A.O. Smith Corp.*, 694 F.Supp. 619 (E.D.Ark. 1988); *Reed v. Armstrong Cork Co.*, 577 F.Supp. 246 (E.D.Ark.1983); Colorado, *Florom v. Elliott Mfg.*, 867 F.2d 570 (10th Cir.1989) (applying Colorado Law); *Johnston v. Amsted Indus., Inc.*, 830 P.2d 1141 (Colo.Ct.App.1992); Florida, *Bernard v. Kee Mfg. Co.*, 409 So.2d 1047 (Fla.1982); Georgia, *Bullington v. Union Tool Corp.*, 254 Ga. 283, 328 S.E.2d 726 (1985); Illinois, *Nilsson v. Continental Mach. Mfg. Co.*, 251 Ill.App.3d 415, 190 Ill.Dec. 579, 621 N.E.2d 1032 (1993); *Domine v. Fulton Iron Works*, 76 Ill.App.3d 253, 32 Ill.Dec. 72, 395 N.E.2d 19 (1979); Iowa, *Pancratz v. Monsanto Co.*, 547 N.W.2d 198 (Iowa 1996); Kentucky, *Conn v. Fales Div. Of Mathewson Corp.*, 835 F.2d 145 (6th Cir.1987) (applying Kentucky law); Maryland, *Nissen Corp. v. Miller*, 323 Md. 613, 594 A.2d 564 (Ct.Spec.App.1991);

Massachusetts, *Guzman v. MRM/Elgin*, 409 Mass. 563, 567 N.E.2d 929 (1991); Minnesota, *Niccum v. Hydra Tool Corp.*, 438 N.W.2d 96 (Minn.1989); *Cooper v. Lakewood Engineering & Mfg. Co.*, 45 F.3d 243 (8th Cir.1995) (applying Minnesota Law); Missouri, *Chemical Design, Inc. v. American Standard, Inc.*, 847 S.W.2d 488 (Mo.Ct.App.1993); *Wallace v. Dorsey Trailers Southeast, Inc.*, 849 F.2d 341, 343 (8th Cir.1988) (applying Missouri law); Nebraska, *Jones v. Johnson Mach. & Press Co.*, 211 Neb. 724, 320 N.W.2d 481 (1982); North Carolina, *Budd Tire Corp. v. Pierce Tire Co., Inc.*, 90 N.C.App. 684, 370 S.E.2d 267 (1988); North Dakota, *Downtowner Inc. v. Acrometal Prods., Inc.*, 347 N.W.2d 118 (N.D.1984); Ohio, *Welco Indus., Inc. v. Applied Co.*, 67 Ohio St.3d 344, 617 N.E.2d 1129 (1993); Oklahoma, *Pulis v. United States Elec. Tool Co.*, 561 P.2d 68 (Okla.1977); South Dakota, *Hamaker v. Kenwel–Jackson Mach., Inc.*, 387 N.W.2d 515 (S.D.1986); Texas, *Griggs v. Capitol Mach. Works, Inc.*, 690 S.W.2d 287 (Tex.Ct.App. 1985); *Mudgett v. Paxson Mach. Co.*, 709 S.W.2d 755 (Tex.Ct.App.1986); *Vermont, Ostrowski v. Hydra–Tool Corp.*, 144 Vt. 305, 479 A.2d 126 (1984); Virginia, *Harris v. T.I., Inc.*, 243 Va. 63, 413 S.E.2d 605 (1992); West Virginia, *Davis v. Celotex Corp.*, 187 W.Va. 566, 420 S.E.2d 557 (1992); *Jordan v. Ravenswood Aluminum Corp.*, 193 W.Va. 192, 455 S.E.2d 561 (1995) (per curiam); Wisconsin, *Fish v. Amsted Indus., Inc.*, 126 Wis.2d 293, 376 N.W.2d 820 (1985); District of Columbia, *LeSane v. Hillenbrand Indus.*, 791 F.Supp. 871, 873–74 (D.D.C.1992) (applying District of Columbia law); Virgin Islands, *Polius v. Clark Equip. Co.*, 802 F.2d 75 (3d Cir.1986, V.I.).

the fundamental principle that those who are responsible for manufacturing and marketing the product—placing the product into the stream of commerce—bear liability for its defects, (2) long established principles of corporate liability, upon which commerce relies, should be given thorough consideration, and (3) a solution to the successor liability issue is best left to the legislature.

### B. Product Line and Continuity of Enterprise Exceptions.

¶ 17 Winsor asks us to adopt the product line exception, the continuity of enterprise exception, or both. Both exceptions have similar underpinnings.

¶ 18 The product line exception was first established in *Ray*. 136 Cal.Rptr. 574, 560 P.2d at 3. It provides for successor liability even if the successor was not involved in the manufacture or distribution of the product but purchases "substantially all the manufacturing assets" and "undertakes essentially the same manufacturing operation as the selling corporation[.]" *Ramirez v. Amsted Indus., Inc.*, 86 N.J. 332, 431 A.2d 811, 825 (1981); *see also Ray*, 136 Cal.Rptr. 574, 560 P.2d at 11.

¶ 19 In *Ray*, the court concluded that under the traditional rules of successor liability, the plaintiff in that case would not be able to recover because none of the recognized exceptions applied. 136 Cal.Rptr. 574, 560 P.2d at 7. *Ray* held that the following considerations supported its rule of expanded liability:

(1) the virtual destruction of the plaintiff's remedies against the original manufacturer caused by the successor's acquisition of the business,

(2) the successor's ability to assume the original manufacturer's risk-spreading rule, and

(3) the fairness of requiring the successor to assume a responsibility for defective products that was a burden necessarily attached to the original manufacturer's goodwill being enjoyed by the successor in the continued operation of the business.

*Id.* at 8–9; *see also Garcia v. Coe Mfg. Co.*, 123 N.M. 34, 933 P.2d 243, 248–50 (1997) (adopting the product line exception); *Dawejko v. Jorgensen Steel Co.*, 290 Pa.Super. 15, 434 A.2d 106, 110 (1981)(same); *Martin v. Abbott Labs.*, 102 Wash.2d 581, 689 P.2d 368, 388 (1984)(same).

¶ 20 The focus of the continuity of enterprise exception is to expand the traditional "mere continuation" exception that is part of the general rule.[3] The traditional "mere continuation" exception applies "only when there is a common identity of officers, directors and stock between the selling and purchasing corporations, and only one corporation after the transfer." *Dawejko*, 434 A.2d at 108. Courts recognizing the continuity of enterprise exception, however, impose successor liability when:

(1) There was basic continuity of the enterprise of the seller corporation, including ... a retention of key personnel, assets, general business operations, and even the [product] name.

(2) The seller corporation ceased ordinary business operations, liquidated, and dissolved soon after distribution of a consideration received from the buying corporation.

(3) The purchasing corporation assumed those liabilities and obligations of the seller ordinarily necessary for the con-

---

**3.** Glasswerks argues that Winsor has waived this argument by failing to raise it below. Winsor claims he preserved this issue by presenting evidence that Glasswerks acquired and maintained LabGlas as an on-going business. However, the substance of Winsor's response below fails to address the continuity of enterprise exception. The absence of this argument below is made clear when contrasted with Winsor's thorough treatment of this theory in his appellate briefs.

Although we generally do not consider issues raised for the first time on appeal, this rule is not jurisdictional. *Jimenez v. Sears, Roebuck & Co.*, 183 Ariz. 399, 406–07 n. 9, 904 P.2d 861, 868–69 n. 9 (1995). We have discretion to consider new arguments on appeal where the issue is of statewide importance. *Id.*; *Aldrich and Steinberger v. Martin*, 172 Ariz. 445, 447, 837 P.2d 1180, 1182 (App.1992). We consider the issue here as the issue has been fully briefed and our analysis is similar to our analysis of the product line exception.

tinuation of the normal business operations in the seller corporation.

(4) The purchasing corporation held itself out to the world as the effective continuation of the seller corporation.

*Turner v. Bituminous Cas., Co.,* 397 Mich. 406, 244 N.W.2d 873, 883–84 (1976); *Savage Arms Inc. v. Western Auto Supply Co.,* 18 P.3d 49, 54–58 (Alaska 2001) (adopting continuity of enterprise exception and rejecting competing considerations from the majority rule).

¶ 21 The underlying policy considerations behind both exceptions are (1) the predecessor is no longer available and the successor is "in a better position than the consumer" to absorb the costs of the injury from the product, (2) the successor has benefitted from the "good will" of the predecessor by continuing to market the same product, and (3) the underlying fairness in requiring a successor corporation to be responsible for the predecessor's products when it continues to manufacture the same product. *E.g., Cyr v. B. Offen & Co.,* 501 F.2d 1145, 1154 (1st Cir. 1974) (failure to place product in the stream of commerce was outweighed by the fact that the successor is "profiting from an[d] exploiting all of the accumulated good will which the products have earned, both in its outward representations of continuity and in its internal adherence to the same line of equipment").

## C. Modification of Successor Liability Laws is Best Left to the Legislature.

■ ¶ 22 We find it unnecessary to discuss in detail the competing policy concerns involved in modifying Arizona's successor liability laws. It is clear to us, regardless of the relative merits of both the present rule and the proposed exceptions, that this issue is best left to the legislature.

¶ 23 We do not suggest that we are without the judicial *power* to broaden successor liability as requested. Rather, our holding is only that in this particular case we should refrain from exercising that power, and defer to the legislature in its representative capacity, because (i) the core issue is one of policy for the legislature, (ii) predictability in our commerce should be encouraged, (iii) the

proposed exceptions modify or minimize fundamental principles of tort liability, and (iv) our present rule already allows for liability against certain successor corporations. We elaborate below.

### (i). The Core Issue is One of Policy for the Legislature.

■ ¶ 24 The core problem that makes successor liability an issue is that the manufacturer of the product is not financially viable. Thus, the policy issue is whether the costs of injury should be shifted from the original manufacturer to its successor. As other courts have recognized, this is the type of policy issue "best handled by legislatures with their comprehensive machinery for public input and debate." *Leannais v. Cincinnati, Inc.,* 565 F.2d 437, 441 (7th Cir.1977); *see also Myers v. Putzmeister, Inc.,* 232 Ill. App.3d 419, 173 Ill.Dec. 130, 596 N.E.2d 754, 758 (1992); *Holifield v. Setco Indus., Inc.,* 42 Wis.2d 750, 168 N.W.2d 177, 181 (1969), *rev'd on other grounds by, Hansen v. A.H. Robins, Inc.,* 113 Wis.2d 550, 335 N.W.2d 578 (1983). As the Colorado Court of Appeals noted, "[i]f liability of successor corporations is to be expanded because the successor may be better suited to pay the costs of injuries, it should be done so by the legislature." *Johnston v. Amsted Indus., Inc.,* 830 P.2d 1141, 1145 (Colo.Ct.App.1992). This was because the policy issue turns on such factors as:

> Whether or not a successor corporation has the ability to gauge the risks of liability, insure against those risks, and spread the costs among the consuming public depends upon a wide variety of factors, such as the potential size and economic strength of successor corporations, the availability of commercial insurance, and the cost of the insurance.

*Id.* The Illinois Court of Appeals has similarly ruled:

> [W]hile the Illinois courts have been struggling with this issue, none have adopted the approach and most have looked to the legislature for direction in this area. *The legislature's role in this situation is especially important in light of the other statu-*

*tory prerogatives governing corporations doing business* in the state of Illinois.

*Myers,* 173 Ill.Dec. 130, 596 N.E.2d. at 759 (emphasis added).

¶ 25 That the issue is one of policy for the legislature is also evidenced by the argument that the best solution to the underlying problem may be one that only the legislature is empowered to implement. For instance, one proposed solution is that "some form of bond or other security [could be] posted by the predecessor manufacturer in an amount not to exceed the net value of the predecessor at time of transfer." Restatement § 12, Reporters' Note, cmt. b; *see* Michael D. Green, *Successor Liability: The Superiority of Statutory Reform to Protect Product Liability Claimants,* 72 CORNELL L.REV. 17 (1986) (recommending a statutory solution to the problem by requiring dissolving corporations to provide potential products-liability plaintiffs with adequate protection). Without considering whether such a proposal is or is not appropriate, this proposal addresses the core problem but does not modify fundamental principles of liability. This, however, is an avenue of relief that the court is simply unable to provide; it is one clearly left for legislative consideration. More importantly, it is an example of why the policy of successor liability in Arizona should not be determined by an evaluation of one case presented for judicial review, but by a thorough consideration of the broader social policies and costs that is entrusted to the legislature in its representative capacity. *See* Ariz. Const. art. 4, pt. 1, § 1 ("The legislative authority of the State shall be vested in the Legislature ..."); *Adams v. Bolin,* 74 Ariz. 269, 247 P.2d 617 (1952).

### (ii). Predictability in our Commerce.

¶ 26 Another reason that courts have deferred to legislatures is the "drastic departure from traditional corporate law" that the exceptions represent. *Johnston,* 830 P.2d at 1144; *see also Polius v. Clark Equip. Co.,* 802 F.2d 75, 83 (3d Cir.1986, V.I.) ("Predictability is vital in the corporate field."). Our jurisprudence also expressly recognizes giving consideration to "the predictability that an orderly commerce requires." *Wells Far-*

*go Bank v. Ariz. Laborers, Teamsters & Cement Masons Local No. 395 Pension Trust Fund,* 201 Ariz. 474, 492, ¶ 66, 38 P.3d 12, 30 (2002) (quoting *Southwest Sav. & Loan Ass'n. v. SunAmp Sys. Inc.,* 172 Ariz. 553, 558, 838 P.2d 1314, 1319 (App.1992)). Thus, this too is a factor in our determination that this matter is best left to the legislature, giving ample opportunity for all interests to be heard on this issue.

### (iii). The Proposed Exceptions Modify or Minimize Fundamental Principles of Tort Liability.

¶ 27 We recognize, of course, that the doctrine of products liability in Arizona had its origin in the courts. *O.S. Stapley Co. v. Miller,* 103 Ariz. 556, 447 P.2d 248 (1968); *Colvin v. Superior Equip. Co.,* 96 Ariz. 113, 392 P.2d 778 (1964). As one writer recently noted, "[i]f the Arizona legislature were to repeal the entire [p]roduct [l]iability [c]hapter, one could still bring a product liability lawsuit in Arizona." Ann Larimer Robertson, *When Worlds Collide,* ARIZONA ATTORNEY, April 2002 at 38, 40. Notwithstanding the judicial origins of product liability in Arizona, we agree that any change in successor liability laws is best left to the legislature where the liability sought extends beyond the fundamental principles upon which tort liability is based.

¶ 28 Since Arizona first recognized products liability actions, the causal connection between the chain of distribution and the responsibility to compensate those injured by a product has been fundamental. Without embarking on a full-scale tour of Arizona's products liability cases, we note that, historically, the concept of products liability was first adopted in Arizona in *Colvin.* 96 Ariz. 113, 392 P.2d 778. *See O.S. Stapley Co.,* 103 Ariz. at 559, 447 P.2d at 251 ("In the recent case of *Colvin v. Superior Equipment Company* ... this court adopted the modern legal concept of the manufacturer's strict liability and tort with regard to its manufactured products.") (quoting *Nalbandian v. Byron Jackson Pumps,* 97 Ariz. 280, 287, 399 P.2d 681, 686 (1965)) (Lockwood J., concurring). Justice Lockwood's concurrence in *Nalbandian* emphasized that "a manufacturer is strict-

ly liable in tort when an article *he places on the market,* knowing that it is to be used without inspection for defects, proves to have a defect that causes injury to a human being." 97 Ariz. at 288, 399 P.2d at 687 (quoting *Greenman v. Yuba Power Prods., Inc.,* 59 Cal.2d 57, 27 Cal.Rptr. 697, 377 P.2d 897, 900 (1963)) (emphasis added). The theory was not initially phrased as "strict liability," but rather "the implied warranty made by the manufacturer to the consumer." *Id.* In *Stapley,* the court expressly dealt with the issue of "whether or not the doctrine of 'Products Liability' or 'Strict Tort Liability' applies in Arizona." 103 Ariz. at 559, 447 P.2d at 251. *Stapley* adopted Restatement Second § 402, which provided for strict liability for the "one who sells" the defective product. *Id.* Thus, the roots of products liability in Arizona clearly tie to the entities associated with placing the product into the stream of commerce, be they seller, manufacturer or distributer.

¶ 29 Arizona's subsequent cases are consistent with this causal link between liability and placing the product into the stream of commerce. *Torres v. Goodyear Tire & Rubber Co.,* 163 Ariz. 88, 91, 786 P.2d 939, 942 (1990) ("The underlying objective of the doctrine [of products liability] was to *place the risk of loss on those in the chain of distribution of defective, unreasonably dangerous goods.*") (emphasis added); *Tucson Indus., Inc. v. Schwartz,* 108 Ariz. 464, 467–68, 501 P.2d 936, 939–40 (1972) ("Strict liability is a policy device to spread the risk from one to whom a defective product may be a catastrophe, to those who marketed the product, profit from its sale, and have the know-how to remove its defects *before placing it in the chain of distribution.*") (emphasis added).

¶ 30 Arizona products law, as well as products law generally, has broadly construed the reach of products liability for those "who are involved in the chain of production or distribution of the product." *Torres,* 163 Ariz. at 92, 786 P.2d at 943. Our courts have found liability for those in the chain of production or distribution as a lessor, *Lechuga, Inc. v. Montgomery,* 12 Ariz.App. 32, 38, 467 P.2d 256, 262 (1970); those involved in used goods, *Jordan v. Sunnyslope Appliance Propane &*

*Plumbing Supplies, Co.,* 135 Ariz. 309, 314, 660 P.2d 1236, 1241 (App.1983); those donating pharmaceutical products, *Gaston v. Hunter,* 121 Ariz. 33, 46–47, 588 P.2d 326, 339–40 (App.1978); and trademark licensors. *Torres,* 163 Ariz. at 88, 786 P.2d at 939. We have not, however, expanded liability to those entities who bear no causal connection to the production or distribution of the product.

¶ 31 In short, a fundamental tenet of our products liability law is that compensation for injury is tied to those who have a causal connection to placing the product into the stream of commerce. The product line and continuity of enterprise exceptions at issue overlook or minimize this causal link. As another court stated in analyzing this issue:

> *[T]he Restatement reaffirms the notion of a causal relationship between the defendant's acts and the plaintiff's injury—a concept that is fundamental to tort law.* The corporate successor theory as espoused by Michigan [continuity of enterprise] and California [product line exception] brush aside this bedrock requirement and impose liability on entities which in fact had no connection with the acts causing injury.

*Polius,* 802 F.2d at 81 (emphasis added). Other courts concur. *Bourque v. Lehmann Lathe, Inc.* 476 So.2d 1125, 1129 (La.Ct.App. 1985) ("Whatever the merits of fashioning a possible remedy for plaintiff may be, it remains a basic element of our tort law that a defendant must be responsible in some manner for plaintiff's injury before that defendant can be held answerable in damages. Compensation is certainly an important goal of our tort law, but it does not override the premise that compensation must be made by one responsible for the tort."); *Johnston,* 830 P.2d at 1144 (noting authorities determining that "the exception is inconsistent with basic strict liability principles [and] results in the imposition of liability without a corresponding duty [.]") (citations omitted); *Domine v. Fulton Iron Works,* 76 Ill.App.3d 253, 32 Ill.Dec. 72, 395 N.E.2d 19, 23 (1979)("The corporate successor to the manufacturer of an allegedly defective product, who takes succession after the product has left the manufacturer's control, is clearly outside of

the original producing and marketing chain.").

¶ 32 Accordingly, we agree that in considering the two exceptions "[s]uch a profound change in tort law is appropriately the subject of legislation, not judicial fiat." *Polius*, 802 F.2d at 83.

### (iv.) Our Present Rule Allows for Liability Against Certain Successor Corporations.

■ ¶ 33 Another factor we consider in deferring to the legislature is that our present rule of liability for successor corporations allows for liability of successors under certain circumstances. In particular, where "the purchasing corporation is a mere continuation [or reincarnation] of the seller," *Teeters*, 172 Ariz. at 329, 836 P.2d at 1039, a successor will be liable. This is also consistent with the majority and Restatement rule which provides for successor liability when the purchase by the successor "results in the successor becoming a continuation of the predecessor." Restatement § 12(d).

■ ¶ 34 Successor liability will also result in circumstances when "the transfer of assets to the purchaser is for the fraudulent purpose of escaping liability for the seller's debts." *Teeters*, 172 Ariz. at 329, 836 P.2d at 1039. Again, this is consistent with the majority and Restatement rule which provides for successor liability when the purchase "results from a fraudulent conveyance to escape liability for the debts where liabilities are the predecessor." Restatement § 12(b).

¶ 35 Both these considerations—allowing for successor liability where there is a "mere continuation" or a transfer for the fraudulent purpose of avoiding predecessor liability—are consistent with our supreme court's pronouncement in *Torres v. Goodyear Tire & Rubber Co.* as to corporate form. 163 Ariz. at 92–93, 786 P.2d at 943–44. In that products liability action, Goodyear's defense relied heavily on the separate corporate identities of its subsidiaries. The supreme court recognized the importance of corporate form, but would not allow it to be used for the questionable purpose of "allow[ing] multinational firms the freedom to compartmentalize strict liability by choosing organizational forms that will require actions for defective design of a product such as this to be brought in Luxembourg, those for defective manufacture in Great Britain, those for defective labeling in a third, and the like." *Id.* at 92, 786 P.2d at 943 (emphasis added). Our present rule from *Teeters* is consistent with *Torres* and affirmatively provides for successor liability when corporate form has inappropriately been used to escape liability.

■ ¶ 36 We note that in the matter at hand there is no allegation that the transfer of assets was done with the intent of depriving Winsor of his claim. Indeed, Winsor's claim did not rise until some two years after Glasswerks made the purchase. Thus, by leaving this matter to the legislature we do not impair a party's ability to seek redress when corporate form is being fraudulently used.

### CONCLUSION

¶ 37 We decline the invitation to expand Arizona products liability law to include successor corporations not involved in placing the product into the stream of commerce. For the reasons set forth above, whether successor corporations should take on the risk-spreading role of the original manufacturer is a matter best left to the legislature. Accordingly, we affirm.

CONCURRING: SUSAN A. EHRLICH, Presiding Judge, and PHILIP HALL, Judge.